RENSHAW, Appellant, v. TRIPLETT AND OTHERS, Respondents.

1. A notice of the protest of a bill of exchange for non-acceptance or nonpayment, placed in due time in the post-office, directed to a prior endorser, is sufficient to hold such endorser, although, from the failure of the mail, it should not reach its destination.

2. Where a bill of exchange was protested for non-acceptance, and notice was duly sent to the last endorser through the post-office, which notice never reached its destination through a failure of the mail; and the bill was afterwards presented for payment and was protested for non-payment, due notice of which was given to the last endorser: *held,* that, although the protest for *non-acceptance* was duly *noted* upon the face of the bill received by

Renshaw v. Triplett.

the last endorser at the same time with the notice of the protest for non-payment, yet a notice of the protest for non-payment only, given by such endorser to a prior endorser, without a notice of the protest for non-acceptance would be sufficient to charge such prior endorser.

3. Where the last endorser of a dishonored bill receives due notice of its dishonor from the holder, and with this notice to himself, receives, enclosed in the same letter, notices directed to prior endorsers, the due service of these notices upon such prior endorsers will, it seems, be sufficient to charge them.

*Appeal from St. Louis Court of Common Pleas.*

This was an action against the defendants as first endorsers of a bill of exchange. The bill was dated May 12, 1853 ; was drawn by M. Langhorne on J. J. Childs, of New Orleans, in favor of the defendants, and payable thirty days after date. After several endorsements, the bill came to the possession of and was held by the Bank of the State of Missouri. The bank, by its cashier, endorsed the bill and transmitted it to the Bank of Louisiana, at New Orleans, for collection. The Bank of Louisiana caused the bill to be presented to Childs, the drawee, for acceptance. Acceptance was refused, and the bill was protested for non-acceptance, on the 31st day of May, 1853. This protest was duly *noted* on the face of the bill. On the day of the protest, the notary who made the protest enclosed notices to the drawer and each of the endorsers in one envelope, directed to the cashier of the Bank of the State of Missouri, St. Louis, Missouri, and deposited the same in the post-office at New Orleans. This package was never received by the Bank of the State of Missouri, or its cashier. On the day of the maturity of the bill, it was presented to the said Childs for payment, and payment thereof was refused. The bill was protested for non-payment, and notices of protest were made by the notary for the drawer and each of the endorsers, and enclosed in the same manner as the notices previously sent had been. These were received by the Bank of Missouri. There was evidence on behalf of the plaintiff tending to show that these notices of protest for non-payment were served by the

Bank of the State of Missouri, on the day of their receipt, on the drawer and the several endorsers of the bill. The signatures of the drawer and endorsers were proved, and the bill read in evidence. The title of plaintiff was admitted.

The plaintiff resting here, the court, upon the motion of defendants, gave the following instruction to the jury: "Upon the evidence given in this cause, the plaintiff is not entitled to recover." To the giving of this instruction, plaintiff duly excepted. Thereupon, plaintiff submitted to a nonsuit, with leave to move to set the same aside, which motion having been made and overruled, the case is brought here by appeal.

*Krum & Harding*, for appellant.

I. The holder of the bill at the time of its protest for non-acceptance (the Bank of Louisiana) was, for all the purposes of this case, a distinct and independent holder, and its acts are to be regarded as they would be if it were a holder for value. (Story on Prom. Notes, § 326; see cases cited *infra*.)

II. The Bank of Louisiana was only bound to notify its immediate endorser, the Bank of the State of Missouri, and the latter was entitled to one whole day after its receipt of notice, in which to notify its immediate endorser, the prior endorsers having the same right in their turn. (Story's Prom. Notes, § 331, 335, *a*; 5 Metc. 212; 1 Ohio State R. 206; 4 Hill, 129.)

III. The Bank of Louisiana had performed its whole duty when it caused a notice to be deposited, in proper time, in the post-office at New Orleans, and addressed properly to reach its immediate endorser, and it was wholly immaterial, as far as the liability of the latter was concerned (treating the Bank of Louisiana as a holder for value) whether the notice ever reached its destination or not. (Story's Prom. Notes, § 328.)

IV. It is a general rule that if the holder does any act, or is guilty of any laches, whereby the drawer or acceptor is discharged, all of the parties to the bill, subsequent to the drawer or acceptor, are also discharged, because they have lost their recourse against those who were liable over to them.

V. The Bank of Missouri did not lose its remedy over, on the return of the bills, by reason of the failure of the mail. It had not exhibited any want of diligence, and was entitled to one day after its own receipt of notice, in which to notify its immediate endorser. (Story's Prom. Notes, § 335, *a*.)

VI. The first notice of protest for non-acceptance which the Bank of Missouri received, was when the bill came back under protest, with the notice of protest for non-payment. It is admitted by the pleadings that notice of the non-payment was given by the Bank of Missouri to the prior endorsers as soon as received. And appellant contends that it was not the duty of the bank to give, at the same time, a useless and idle notice of protest for non-acceptance. (See 9 Howard, 552.) Notice of *dishonor* was given as soon as received, and that was enough to enable all concerned to look after their interests in the premises.

VII. The enclosure of notices, in the manner indicated in the bill of exceptions, viz., there being separate notices for each firm or individual who was party to the bill, and all endorsed in one envelope, directed to the last endorser, whose residence was the same as that of the other endorsers, is a sufficient separate notice to each endorser. (See 22 Conn. 213 ; 7 Gill, 216 ; 18 Ohio, 54 ; 5 Shep. 360.) The question as to whether such an enclosure is due diligence, is for the court to decide as a matter of law. (7 Gill, 216 ; 2 How. 457 ; see also 1 Ohio, 296 ; 9 Howard, 552 ; 6 Watts & S. 399 ; 4 Ad. & El. 870.) If then there was nothing unusual or of practical inconvenience in making the enclosure of the notices in the manner aforesaid, the court ought to declare that due diligence had been used, in giving notice to each of the prior endorsers, and that they are charged with notice, notwithstanding the non-arrival of the package containing said notices.

*B. A. Hill & Kasson*, for respondents.

I. The omission to give notice of non-acceptance discharged the endorsers. (Story on Bills, § 284 ; Glasgow v. Copeland, 8 Mo. 268.) There was no notice of non-acceptance given to

Renshaw v. Triplett.

the defendants, the first endorsers of the bill. It is manifest that the notary of the Bank of Louisiana did not know the residence of the drawer and the several prior endorsers ; and as agent for the Bank of Missouri, he performed his duty, according to the custom of the bank, by sending all the notices to the bank, to be served upon the respective parties, according to law. The sending of the notices to the Bank of Missouri was notice to the bank only, and not to the parties whose notices were enclosed therein, until they were served. (Story on Bills, § 294.) But it is further objected by the plaintiff, that the Bank of Missouri never having received any notice of non-acceptance from the notary, it is to be excused from giving notice of that which it had no information. This pretext is entirely overthrown and answered by the fact that the protest for non-acceptance appears upon the face of the bill, as of the 31st May, 1853, and this bill came to the bank thus noted upon the face before any notices of non-payment were sent out, and then the duty to notify for non-acceptance clearly arose, and it was imperative for the bank to give the notice of non-acceptance, or the endorsers and drawer were discharged. If this last objection have any force, still it doth not appear how the Bank of Missouri could excuse itself for the failure to give notice of non-acceptance, on the ground of neglect or failure of its agent to secure a transmission of the notice to it. It was competent for the Bank of Missouri to note the residence of each endorser and drawer, so that the notice could be sent direct to each by its agent at New Orleans in case of non-acceptance or non-payment, and then the notices by mail to each party would have bound them. But this course was not adopted, and it chose to act as principal, and, according to the custom of the bank it became the party to give the notice, and its agent, standing between it and the acceptor, only did what it required, and the notices were only between the two banks, and the privity can not be held to extend to other parties. Now, although notices may be clearly given by an agent to all the parties, yet, if the agent only give notice

to his principal, the principal must himself give notice in order to bind prior parties. If the notice to the principal miscarries, upon what ground is the principal to be discharged from his obligation to give the notice ; and, more particularly, how is the principal to excuse his laches, when we show actual notice to him of the protest for non-acceptance noted upon the face of the bill ? (See Sewall v. Russell, 3 Wend. 276 ; Talbott v. Clark, 8 Pick. 51 ; Mead v. Eñgs, 5 Cow. 303 ; Chace v. Taylor, 4 Har. & John. 54 ; Freeman's Bank v. Perkins, 6 Shepley, 292 ; Fleming v. McClure, 1 Brevard, 428 ; Riggs, to use, &c., v. McDonald, 1 Ala. 643 ; Story on Bills, § 228 ; O'Keefe v. Dunn, 5 Maule & Selw. 285-6-7 ; Blesaid v. Hirst, 5 Burr. 2670 ; Goodall v. Dalley, 1 T. R. 712 ; Roscow v. Hardy, 2 Camp. 458 ; 6 Taunton, 305 ; Chitty on Bills, 313 ; United States v. Barker, 4 Wash. C. C. 464 ; 12 Wheaton, 559 ; Carmichael v. Pennsylvania Bank, 4 How., Miss., 567.) The protest for non-payment gave no notice of the non-acceptance, nor any information of the fact, so as to inform the creditors that they could look only to the drawer, and had not the security of the name of the acceptor.

SCOTT, Judge, delivered the opinion of the court.

This case comes here on the general instruction, that, on the evidence, the plaintiff was not entitled to recover. Under such circumstances, the counsel have agreed that the only point determined below was, whether there was such notice to the prior endorsers as would warrant a recovery against them by a holder who had taken up the bill whilst in the hands of the Bank of Missouri.

A bill of exchange, payable thirty days after date, was endorsed to the Bank of Missouri after several intermediate endorsements. The bank endorsed it for collection to a bank in New Orleans. The bill was presented for acceptance, and acceptance being refused, was protested. Notice of this protest was deposited in the post-office, directed to the Bank of Mis-

souri, enclosing notices also to the prior parties to the bill. The letter enclosing the notices of the protest for non-acceptance was never received by the Bank of Missouri. Afterwards, the bill was protested for non-payment, and due notice of this protest was given to all the parties. The bill enclosed in this notice of protest was noted on its face as having been protested for non-acceptance, and after the receipt of it no notice was then given of the protest for non-acceptance.

Are the endorsers on the bill prior to the endorsement to the Bank of Missouri, liable on this state of facts ? The fact that the bill was only endorsed to the bank in New Orleans as agent for collection, does not affect this question, it being well settled, that, for all the purposes of the law, the agent or banker to whom a bill has been transmitted for the purpose of procuring payment thereof at its maturity, is treated as substantially a distinct and independent holder. (Story on Prom. Notes, § 326.) It is equally well settled that, though a bill payable at a particular day, or at so many days after date, is not required to be presented for acceptance before it is due, yet it may be so presented, and if that is done and acceptance is refused, the holder must conduct himself in the same way, and make protest and give notice in the same manner as he would upon a bill payable at so many days after sight. (Story on Bills, § 228.) If there be several endorsers on a bill, the last of whom shall receive notice of the dishonor from the holder, it will be sufficient for him on the next day to communicate notice thereof to the next antecedent endorser, and he to the next, and so on ; and thus, in some cases, several days may elapse before notice reaches the first endorser. The holder of a bill, when it has been dishonored, may either resort to his immediate endorser, and then he must give him notice in due time ; or he may resort to any or all of the other endorsers, in which case he must give them notice respectively, in the same manner as if each was the sole endorser ; for the holder is not entitled to as many days to give notice as there are prior endorsers, but each endorser has his own day. (Story on Bills, § 294.)

If a notice is put in the post-office to go by the proper post, it is not important to the rights of the holder whether the notice ever reaches the party entitled to it or not. All that the law requires of him is to send due notice in proper time, and he has discharged his whole duty when he puts it into the proper post-office, in due time, directed in a proper manner. (Story on Prom. Notes, § 328.)

If, according to the foregoing principles, notice is imputed by law to the Bank of Missouri, then she was not guilty of any negligence in not giving notice to the prior endorsers. Unless she was served with notice, she could not give it. The Bank of Missouri was entitled to one day to give notice, after her own receipt of notice. As she never did receive notice, she could not be guilty of negligence in not communicating it to others. If the principle is correct of imputing notice from merely placing in the post-office a letter containing it, whether that letter is received or not, then there is no hardship in holding the prior endorsers of this bill liable though they have not received notice. If the bank is held liable without actual notice, why should not the prior endorsers be equally bound? It would be against every principle of justice to visit on one party only the consequences of the accidental failure to receive notice, when he is no more in fault than any of the other parties. Under such circumstances, equity requires that the liabilities of the parties to the bill should not be disturbed, and that they should stand as though all had received notice.

As to the ground taken that the bank should have given notice of the non-acceptance of the bill after she received notice of the non-payment, it appearing from the face of the bill, enclosed in the letter containing notice of the non-payment, that it had been protested for non-acceptance, it may be answered that notice of non-payment was sufficient to put all parties upon inquiry after their interests. Moreover, a right of action on a bill accrues immediately after protest for non-acceptance, although the bill may not be due. (Chitty on Bills, 340.) Now if the right of action accrues immediately on pro-

test for non-acceptance, that right could not afterwards be defeated by a failure to give notice of non-acceptance after notice of the protest for non-payment was received. (Lambert v. Ghiselin, 9 How. 552.)

The judgment is reversed, and the cause remanded; the other judges concurring.