## UNIVERSITY PRESS v. WILLIAMS.

(Supreme Court, Appellate Division, First Department. February 23, 1900.)

1. NOTES—PROTEST—NOTICE—DILIGENCE.

On protest of a note of S. & K., a New York corporation, having its place of business in New York City, where the note was payable, the holder sent notice of dishonor to plaintiff (an indorser), a Massachusetts corporation, having its place of business in Massachusetts. Plaintiff sent a similar notice to defendant, in care of S. & K., at its business address. Defendant did not reside in New York, and had no place of business there, though he occasionally came there, and had no fixed place of receiving mail there, and did not receive the notice. He resided in Washington. *Held*, that plaintiff did not use due 'diligence to ascertain defendant's residence; its treasurer, who sent the notice, not having inquired of the maker of the note, or of defendant's attorney in New York, though he knew his address, and he having testified that he understood defendant was, more or less, going or coming,—being in Washington at times, in New York at various times, and abroad a great deal,—and that he thought that at the time of the notice he was staying at H., with K.. the president of S. & K., and that he understood that it was his custom, when in New York, to stop with K.

2. DIRECTION OF VERDICT—SUBMISSION.

Plaintiff, an indorser of a note, in an action thereon against a prior indorser pleaded and relied on demand and notice of nonpayment; and the case was tried on the issue of diligence in ascertaining defendant's residence, raised by his denial of notice. Plaintiff, after giving rebutting evidence on the question of diligence, gave certain testimony tending to show waiver of notice, which, however, had been denied by defendant, and which seems to have gotten into the case merely as part of the conversation relating to the issue of diligence. When both sides had rested, the judge said, "If you will both make a motion for a direction, I will look at the question of notice." Each counsel said, "I make such notice." The judge then said, "Both sides make the motion, and both sides may hand me in anything on the subject, and I will look at the matter." *Held*, that the submission was only on the question of notice as regards diligence, and that the direction of a verdict on the ground of waiver was unauthorized.

Ingraham and O'Brien, JJ., dissenting.

Appeal from trial term, New York county.

Action by the University Press (John Wilson & Son, Incorporated) against George B. Williams. From a judgment on a direction of the court for plaintiff, and from an order denying a motion for a new trial on the minutes (59 N. Y. Supp. 817), defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William Cowper Prime, for appellant.
Lloyd McK. Garrison, for respondent.

BARRETT, J. The section is brought upon two promissory notes made by Stone & Kimball, a domestic corporation, to its own order, and indorsed by it and by the defendant. When the note matured it was held by a New York bank, whose notary protested it, and sent notice of dishonor to the plaintiff. The latter's treasurer, White, then mailed a similar notice to the defendant, in the care of Stone

& Kimball, at the latter's business address, in the city of New York. The defendant, however, neither resided in the city of New York, nor had a place of business there. He resided in Washington, D. C., and has resided there since 1887, with the exception of the years 1892 and 1893, when he resided in England. He came to New York occasionally, stopping at various hotels, but had no place here where he received mail matter, except when he was stopping at a hotel. He never in fact received any notice of dishonor. The question is, was there due diligence to ascertain the defendant's residence? Upon disputed facts, this is a question of law. The notary who protested the note also mailed notices of dishonor to the defendant at "New York, N. Y.," and "Boston, Mass.," but he made no inquiry, and did nothing whatever to ascertain the defendant's residence or place of business. He simply mailed notices of dishonor to him at haphazard, and neither of these notices was, as we have seen, addressed to his residence or place of business. The notice given to the plaintiff by the notary was, however, sufficient, and upon its receipt the plaintiff was entitled to the same time to notify the defendant as the bank had had to notify it. It was not necessary that the notice should come to the defendant from the bank, and the notary's insufficient notice to the defendant would have been harmless, had the plaintiff's notice to him been sufficient. The rule is that the notice suffices if it be given, after the dishonor, by one who is, on its payment and return to him, entitled to reimbursement from the preceding indorser. Chit. Bills, p. 494. There is the further rule that where, at the time of the dishonor, the holder is ignorant of the proper address of the party to be notified, it will be sufficient if the notice is given on the day succeeding that on which such holder, after exercising reasonable diligence, is in a position to give notice. 4 Am. & Eng. Enc. Law (2d Ed.) p. 436, and cases there cited. This further rule is equally applicable to one who, upon taking the note up, becomes entitled to reimbursement from the preceding indorser. The difficulty here is that the plaintiff used no greater diligence to ascertain the defendant's residence or place of business than did the notary. Like the latter, it trusted to chance. Being ignorant of the defendant's proper address, its officers were bound to make reasonable inquiries in endeavoring to ascertain it. They could not allow themselves to remain "in a state of passive and contented ignorance." Chit. Bills, p. 493, quoting an observation of Lord Ellenborough in Bateman v. Joseph, 2 Camp. 461. Their duty was, at least, immediately to apply to the other parties to the note for information. Id. Mr. Daniel (citing numerous cases) says that "in seeking to ascertain the whereabouts of the indorser or drawer, in order to communicate notice, inquiry should be made of the maker or acceptor" (2 Daniel, Neg. Inst. [4th Ed.] § 1116); and he adds, "It is desirable that this rule should be strictly observed, as well for the sake of uniformity, as for the reason that it secures diligence." An exception to the rule is where, "from previous answers of parties likely to know, the holder had received information sufficiently reliable." Id. § 1117.

Mr. White concedes that he had here no definite or reliable information. This is his testimony upon the subject:

"I understood that General Williams was, more or less, coming and going. He was in Washington at times, and in New York at various different times, and he was abroad a great deal; and at this particular time I think he was staying at a place called 'Hartsdale,' with Mr. H. I. Kimball, the president of the Stone & Kimball Co. It was either at Hartsdale or at the Albermarle, in New York. I understood it was his custom to stop with Mr. Kimball when he was in New York, and I mailed it to him, at 139 Fifth avenue."

A note to Mr. Kimball or to the Stone & Kimball Company, asking the required information, would have been a reasonable inquiry. It would have been as easy to write such a note to that company as to send such a notice to the defendant in its care. Mr. White could also have written the defendant's attorney, a Mr. Whitford. He knew that the latter was the defendant's attorney in New York City, for he testified to a conversation with the defendant and this attorney, upon the subject of these notes, prior to their maturity. His own and his company's nonresidence did not absolve him from making these inquiries. Inquiry cannot well be called reasonable which is limited to the residence of the foreign holder. It is surely not due diligence to inquire outside the pale of possible information. Nor can the probable futility of inquiry at the holder's residence absolve him from any inquiry at all. It cannot even inconvenience him to make inquiries by letter of an accessible maker, or of other accessible persons, who, from their connection with the transaction or parties, are likely to be informed. 2 Daniel, Neg. Inst. (4th Ed.) § 1115. As already suggested, too, the law extends the holder's time to give the indorser notice while he is making such inquiries, and exercising reasonable diligence to procure the proper information. As no inquiry was here made, or diligence shown, it is clear that the plaintiff must fail on this branch of the case.

It is, however, contended that there was a waiver of the notice. But that question is not in the case. The plaintiff relied upon demand and notice of nonpayment. That is what it pleaded, and what it attempted to prove. The case was tried upon the issue of diligence raised by the defendant's denial of notice, and the proof on both sides related solely to that issue. It was only after the defendant had rested that the plaintiff, in rebuttal, introduced the testimony upon which it now claims waiver. This testimony followed its rebutting evidence on the question of diligence. Indeed, it seems to have got into the case merely as a part of the conversation relating to this actual issue. When both sides had rested, the learned trial justice at once observed, "If you will both make a motion for a direction, I will look at the question of notice." The counsel assented, each saying, "I make such motion." The justice then said, "Both sides make the motion, and both sides may hand me in anything on the subject, and I will look at the matter." Clearly, the subject and matter referred to was "the question of notice," which the learned justice had just said he would look at. This could not well have been otherwise; for, if the plaintiff had relied upon the waiver, there was a question of fact for the jury. The defendant, upon his original cross-examination, had denied any promise to pay, made before maturity. The learned justice did not

ask the counsel to move for a direction in order that he might solve the question of fact as to whether such a promise was so made. There was no question of fact upon the issue of diligence, as the evidence on that subject was undisputed. Had the learned justice suggested that both sides should move for a direction, and that he would then look at the questions of notice and waiver, the defendant's counsel could have objected—First, that the question of waiver was not in the case: and, second, that, if it were deemed in the case, he had a right to go to the jury upon it. It is entirely obvious, therefore, that no such question was presented to the learned justice; and that his record direction was simply a ruling that, as matter of law, diligence had been made out. His opinion is not part of the record, and, if it were, it is open to the criticism not only that it discusses a question which was not submitted to him by the motion for a direction, which he himself had invited and limited, but that it entirely overlooked the defendant's contradiction of the testimony upon which the opinion as to waiver was expressed. The learned justice discusses the question of diligence and notice, and then says:

"It also appears in the case, without contradiction, * * * that Mr. White, the treasurer of the plaintiff, had a conversation with the defendant and Mr. Whitford, his attorney, in reference to the notes at the office of the Stone & Kimball Company, and that both then and there assured Mr. White that he need not be worried about the failure [of the company], as these notes would be paid by Mr. Williams, who was abundantly able to meet them."

Mr. White's precise testimony was this:

"I think they both [defendant and Whitford] assured me that these notes would be paid by General Williams, and I had no cause to worry or get excited."

Mr. Williams' testimony was:

"It is not the fact that I saw him [White] before the notes were protested. Q. Didn't you at that time tell Mr. White, before the notes became due, that the notes would be paid by you? A. No."

It is therefore impossible to sustain this direction. It was erroneous upon the question of diligence and notice; and no other question was pleaded, presented for decision, or, so far as appears on the record, decided.

The judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and RUMSEY, J., concur.

INGRAHAM, J. I cannot agree with Mr. Justice BARRETT in his conclusion, as I think the notice of protest given to the defendant by the plaintiff was sufficient to charge the defendant. At the close of the case both parties made a motion for a direction of a verdict. There was no request to submit any question to the jury, and, the learned judge having directed a verdict for the plaintiff, it must be considered that all questions of fact as well as law were submitted to him. If, therefore, the facts would justify a verdict, the judgment should not be disturbed. The action was brought against the defendant as an indorser upon two promissory notes.

These notes were dated, "New York," payable four months after date at 139 Fifth avenue, New York City, and were indorsed by the defendant, the plaintiff being a subsequent indorser. The notes were duly presented for payment, and payment was refused, and the notes were duly protested by the indorser, and notice of protest was given to the plaintiff as an indorser; it being a Massachusetts corporation, with its place of business in Cambridge, Mass., and having no place of business in the state of New York. The plaintiff received notice of protest of the notes on the day after they were protested, and at once mailed notices of protest to the defendant, in care of Stone & Kimball, 139 Fifth avenue, New York City; that being the office of the maker of the notes, and where the same were payable. Mr. White, treasurer of the plaintiff, who had charge of its business, and who received and mailed these notices of protest, testified that this address was the only address of the defendant that he knew of. He knew that the defendant was in Washington at times, and in New York at various times, and was abroad a great deal of the time, and that at this particular time he was staying at a place called "Hartsdale," with Mr. Kimball, the president of the company, the maker of the notes. The witness had had a conversation with the defendant in August at the office of Stone & Kimball, 139 Fifth avenue, just before the notes became due, when he was asked not to sue on the notes, and was assured by the defendant that the notes would be paid by him, and "I had no cause to worry or get excited." It is admitted that this defendant did not reside in the state of Massachusetts, had no office or place of business there, and it is not claimed that there was any one there, with whom the plaintiff was acquainted, who could have given any information to the plaintiff as to the defendant's residence, or where notice of protest was likely to reach him. The plaintiff being a subsequent indorser, notice of protest by it to the defendant was sufficient to charge him as indorser; and the only question presented is whether or not this plaintiff exercised reasonable diligence to discover the address of the defendant, and whether he sent the notice of protest to the defendant according to the best information that he could obtain. It is a general rule that it is sufficient if notice is sent to the indorser, to the place where the information received reasonably required the holder to send them. The holder is not bound or presumed to know where the indorser lives, but it is enough if the agent of the indorsee or holder make due inquiry, and direct the notices to the places indicated by the information, though wrong. This was so held in Harris v. Robinson, 4 How. 336, 11 L. Ed. 1000. The question is, what is due diligence? In Chapman v. Lipscombe, 1 Johns. 294, the defendants, who were merchants residing at Petersburg, Va., drew the note in question, at six months' sight, on Messrs. Hackley & Gisher, by whom it was accepted, and the note was protested on October 18, 1803. The notary put two notices in the post office,—one directed to the defendants at Norfolk, Va., and the other to New York,—informing them of the protest for nonpayment. The clerk testified that he made diligent inquiry after the defendants at the banks in New York and elsewhere, and the in-

formation was that they resided at Norfolk. It was claimed that this was not sufficient; that as the holder of the note was not asked where the defendants resided, and the only inquiry was made of banks, he should not have relied upon such information, but, if he had inquired of the acceptors,—the persons to whom he presented the bill for payment,—he would have learned the real place of their residence. It was held, however, that this was due diligence; that there was no evidence that the plaintiff knew that the defendants resided at Petersburg; that he sent the notice by post to them, and another addressed to them at New York; that this was sufficient, and all that should have been required of him.

In Bank v. Stall, 15 Wend. 366, the rule is stated by Judge Nelson as follows:

"The holders must use ordinary diligence in ascertaining the place of residence or of business of the indorsers, and in giving notice of the dishonor of the note, either personally, or by due course of mail."

In Harris v. Robinson, supra, those cases were cited with approval, as was the statement in Kent, Comm. 107:

"That notice need not always be sent to the post office nearest to the indorser's residence. It suffices, if sent to the nearest which can be ascertained on due inquiry."

And the general result of the authorities in that case is that where reasonable inquiry was made as to the residence of the indorser, and notice promptly dispatched by a proper agent in conformity with the information received, the notice was sufficient.

In 2 Daniel, Neg. Inst. (4th Ed.) § 1116, it is said:

"In seeking the acceptor or maker, to make presentment of the bill or note, due diligence would necessitate an inquiry of the indorser or other party to the instrument, when such party can be conveniently found, before dishonoring it by protest for nonpayment; it being presumed from the relations of the parties that they would be likely to know the whereabouts of each other. And, for the same reasons, in seeking to ascertain the whereabouts of the indorser or drawer, in order to communicate notice, inquiries should be made of the maker or acceptor."

By section 1117 it is said:

"There may be exceptions to the rule, however,—as, for instance, when the maker or acceptor has left the state; and it would not, we think, be necessary to pursue the inquiry of the maker, indorser, or other party, if, from previous answers of the parties likely to know, the holder had received any information sufficiently reliable."

In Bank v. Cox, 13 Gray, 505, it is said:

"If the maker had at the maturity of the note resided in Boston or in the state, or at any place to which the holder would have been bound to resort to demand payment of him, and there was no reason to suppose that the indorser had knowledge of such residence, the omission to inquire of him concerning it would have been a failure to use diligence, and would have had the effect to discharge the indorser from his liability."

In Bank v. Vail, 21 N. Y. 485, it was held that the holder's agent, at the place of payment, may forward the notice to his principal in the interior, and, if the latter forward it seasonably to the party to be charged, he will be fixed, though more time is consumed than there would have been if the agent had sent it directly to the party to whom the ultimate notice was to be given. In Bank v. Taylor, 34 N. Y.

136, it was held that there the holders' whole duty was discharged when they duly transmitted the notice of protest to the Eliot Bank of Boston, and that when that bank duly and seasonably transmitted the notice to the plaintiff, its immediate indorser, and the plaintiff did not duly and seasonably upon its receipt transmit the same to the prior indorser, notice of the protest was sufficient.

In Requa v. Collins, 51 N. Y. 146, the rule is stated as follows:

"But, in case the holder does not actually know the indorser's place of residence, the notice may be addressed to the place where, after diligent inquiry, he is informed and believes he resides. What is due diligence in such a case, the facts being undisputed or ascertained, is a question of law."

In all the cases in which the subject is discussed as to the duty to make inquiry, such inquiry seems to be limited to those persons residing within a reasonable distance of the person bound to give notice; and where there is an obligation to inquire of the maker, or at the place where the note is payable, it is only where such maker or payee is accessible, or has resided in the same city or state, that such inquiries are necessary. No case has been cited where it was held that a person is bound to resort to those in a foreign state or country for information as to the residence of an indorser, and to allow such a delay as would be necessary for such inquiry would fail to accomplish the very purpose for which notice of protest is required. If a note were indorsed by a person in New York, payable in Europe or Asia, and was there protested for nonpayment, and returned to the indorser in New York, with notice of protest to be served upon a prior indorser, it would be unreasonable to say that it would be necessary to make inquiry of the maker or at the place of payment, where such inquiry would require weeks or months before an answer would be received. I apprehend that due diligence only requires the holder of the note to inquire among those who are accessible to him at his residence, and when he makes all inquiries which, from the facts within his knowledge, would tend to give him information as to the maker's residence, and applies the information thus obtained with such information as he before had as to such residence, and sends the notice to the place that from such information is likely to reach the indorser, he complies with his duty, and the indorser is bound. In this case the officer of the plaintiff upon whom the duty to give notice devolved resided at Cambridge, Mass. He knew of the relations which existed between the defendant, the indorser, and the makers of the note; had had interviews with the indorser at the office of the maker, in the city of New York, where the note was payable; had no knowledge of the defendant's residence or business address; could not inquire of the makers as to the indorser's residence, because he was in Cambridge, Mass., and they in another state; and, acting upon the knowledge acquired, he sent the notice where it appeared that the defendant would receive it. I do not think any rule of·active diligence required that he should inquire in another state for the address of the indorser. From his knowledge of the relation of the parties, he assumed that a notice sent to the indorser in care of the maker, in New York, would reach the indorser, and the evidence is that this is all the information that he

had; and there is no evidence that there was any one in the state of Massachusetts who could give any other or better information, or of whom he should have, in the exercise of reasonable diligence, inquired. I think the address to which he sent the notice was that best calculated to give the defendant notice of the protest, from the information which plaintiff's representative had, or from which, in the exercise of ordinary diligence, he could have obtained. · I think the judgment should be affirmed.

O'BRIEN, J., concurs.