## JOHN VOGEL, Appellant, v. O. J. STARR, Respondent.

**Kansas City Court of Appeals, June 29, 1908.**

1. **BILLS AND NOTES:** Holder for Collection: Protest: Notice: Agency. A holder of commercial paper for collection must be regarded as a separate and independent holder for the purpose of presentment, demand, protest and notice of dishonor; and while it may be assumed that it is the duty of the owner to communicate the facts to his agent, it is not his duty to personally perform the duties he had delegated to his agent.

2. ————: Indorser: Protest: Notice: Diligence. The question of diligence in giving notice of dishonor on a bill is a question of law where the facts are undisputed, and when disputed, for the jury under the proper instructions from the court.

3. ————: ————: ————: ————: ————. Where the indorser resides in the town he should receive personal notice or have the notice left at his residence or place of business; but if he lives in the country the notice should be addressed to his post-office; if that is not known, it should be addressed to the nearest postoffice to him if good faith and reasonable diligence fail to find his postoffice.

4. ————: ————: ————: ————: ————: Evidence. On the evidence it is held that the owner, holder for collection and notary exercised reasonable diligence to ascertain the indorser's post-office and that their failure was his misfortune.

Appeal from Grundy Circuit Court.—*Hon. George W. Wanamaker,* Judge.

REVERSED AND REMANDED.

*P. C. Stepp, W. D. Stepp* and *O. N. Gibson* for appellant.

(1) When notice of dishonor is mailed, it should be directed to the endorser at his nearest postoffice. Randolph on Com. Paper, sec. 1279; Ireland v. Kip, 11 Johns. 231; Ferris v. Saxton, 1 South. 1 (N. J.); Bank v. McGruder (Md.), 6 Harr. & J. 172, 14 Am. Dec. 271-

6; Foreman v. Wikoff, 16 La. 20, 35 Am. Dec. 212; Gist v. Lybrand, 3 Ohio 307, 17 Am. Dec. 595; Mead v. Carnal (La.), 6 Rob., 73, 39 Am. Dec. 332; Sanderson v. Reinstadler, 31 Mo. 483; Woods v. Neeld, 44 Pa. St. 86; Bank v. Compton, 3 Rob. 4; Nicholson v. Marders, 3 Rob. 242. (2) This general rule is subject to the qualification that although the notice is sent to a more distant office, the service will nevertheless be good, if it further appears that the endorser was accustomed to receive mail there. Bank v. Lane, 3 Hawks 332, 14 Am. Dec. 595; Coal Co. v. Ryerson, 1 Spenc. 129, 40 Am. Dec. 217; Reid v. Payne, 16 Johns. 218; Mead v. Carnal (La.), 6 Rob. 73, 39 Am. Dec. 552; Sanderson v. Reinstadler, 31 Mo. 483; Barrett v. Evans, 28 Mo. 331. (3) But notice sent to the nearest postoffice is a sufficient service in any case. Coal Co. v. Ryerson, 1 Spenc. 129, 40 Am. Dec. 217; Bank v. Lane,. 3 Hawks 332, 14 Am. Dec. 595; Bank v. Lawrence, 1 Peter 578; Mercer v. Lancaster, 5 Pa. St. 160; Sanderson v. Reinstadler, 31 Mo. 483; and other cases cited under point 1, supra. (4) Notice will be sufficient, although sent to a wrong place, if the holder has used due diligence in ascertaining the place to which it should be sent. Randolph on Com. Paper, secs. 1286-8, 1279; Bank v. Phillips, 3 Wend. 408; Herbert v. Servin, 12 Vroom 225; Harris v. Robinson, 4 How. 336, 11 Law Ed. 1000. Marsh v. Barr, Meigs 68; Hunt v. Nugent, 18 Miss. 546; Bank v. Pierce, 3 Ala. 321; Palmer v. Whitney, 21 Ind. 58; Fugitt v. Nixon, 44 Mo. 285-8; Bank v. Bender, 21 Wend. 643, 34 Am. Dec. 281. (5) Where the facts are undisputed, what constitutes due diligence is a question of law. Lineville v. Welch, 29 Mo. 203; Fugitt v. Nixon, 44 Mo. 285-8; Sanderson v. Reinstadler, 31 Mo. 483-7.

A. G. *Knight* and W. G. *Collison*, for respondent, filed argument.

JOHNSON, J.—Action against the endorser of a negotiable promissory note. The failure of the holder to give proper notice of dishonor is the defense interposed. Trial was before the court without the aid of a jury; judgment was entered for defendant and plaintiff appealed.

The note in question is as follows: ·

"$45.                        Trenton, Mo., Oct. 7, 1895.

"One year after date, I promise to pay to the order of O. J. Starr, forty-five dollars, for value received with interest at the rate of eight per cent per annum from date, until paid, and if not paid annually, the same to become a part of the principal and bear the same rate of interest as the principal debt. Payable at the First National Bank, Trenton, Mo.

"C. MILLARD."

A few days after the execution of the note and long before its maturity, Starr, the payee, sold it to plaintiff for value and endorsed it in blank. Later, plaintiff deposited it with the Trenton National Bank for collection. On the last day of grace, October 10, 1896, and within proper hours, the bank handed the note to a notary public for demand and protest. Millard, the maker, had moved to Wisconsin and Starr, the endorser, lived in the country about twelve miles from Trenton. The notary testified: "Well, it was done on the date that appears on the protest and on the face of the note, which is the 10th day of October, 1896. This note was given to me to protest by the Trenton National Bank of Trenton, Mo. I didn't know at that time the endorser on the back, Mr. Starr, or I didn't know C. Millard, and don't know him now. The bank told me to protest the note, and they gave me information as to where Millard lived; and according to that information I mailed the notice of protest to him at Hanover, Rock county, Wisconsin, and my impression is that in regard

to Mr. Starr's address the bank's best information, that is, they told me they were not certain about it, that's the way I remember it, that it was Spickards, Mo.    And I took the note.    It was payable at the First National Bank, Trenton, Mo., and I took this note to the building that had been occupied by the First National Bank. The First National Bank at that time had gone into liquidation in connection with the old Grundy County National Bank—it had its first banking room at the five corners; and the First National and the old Grundy County National consolidated and liquidated through the Trenton National Bank. . . . This protest shows that I took it to that building and presented it there and found no one there to pay the note.    And after that, out of an abundance of precaution, I went over to the Citizens State Bank, which was diagonally across the street from the building formerly occupied by the First National, and I presented the note there, to the cashier of that bank, as the protest shows, and demanded payment there; I think Walter P. Fulkerson was cashier at that time, and there was nobody there that would pay the note; so from there I went to the Trenton National, or might be probable I made the demand there before I went to the other place; at any rate, I presented the note as the protest shows to the cashier of the Trenton National Bank, Mr. R. M. Cook, and demanded payment of the note.    R. M. Cook had already been the cashier of the First National Bank at which this note was payable, and he was winding up the affairs of the old First National at the time, and also cashier of the Trenton National.    Then I made inquiry as to where Mr. Starr lived and made a diligent search, as I thought. . . .    They thought Mr. Starr lived near or got his mail at Spickards, Missouri, and so I made some other inquiries as to where Starr lived, at the banks, Mr. Cook and the Citizens Bank also, and I

wouldn't say positively as to who else I did inquire of,
. . . I mailed the notice to Starr at Spickards, Mo.
Q. Your information was that that was his post office?
A. From information I got from inquiring of Cook and
Fulkerson and the clerks in each bank, and I wouldn't
say positive but I was in Knight & Harber's office at
the time and Dale Stepp took my affidavit to the notice;
and my impression is I made inquiry among them as to
where Mr. Starr lived, but I may be wrong about that;
I wouldn't state positively; and I mailed the notice.
I have stated in a general way what had been done,
that is in regard to protesting of this note.     And it
was signed and sealed by me and I put that in an en-
velope and mailed it to Mr. Starr at Spickards, Mo.
Put a two cent stamp on it and put it in the post office;
in the same way to Millard, except his was addressed
to Hanover, Rock county, Wisconsin."

Starr did not receive the notice until some three
months after it was mailed, for the reason that Tindall
and not Spickards was his post office. The farm he occu-
pied as a tenant was about one mile nearer Spickards
than Tindall, either by wagon road or as the crow flies,
and Spickard, though a small town was much larger than
Tindall.     But Starr had made the latter place his post
office address while living on a farm nearer to it than
to Spickards and continued to get his mail there.     No
doubt is suggested in the evidence of the good faith of
the notary and of plaintiff's collecting agent in mailing
the notice to Starr's nearest post office, nor do we find
anything indicative of bad faith on the part of plaintiff,
the owner of the note.     He was not in Trenton on the
date of the protest, nor had he imparted to his collec-
tion agent the information he possessed respecting
Starr's post office address. Had he done this, we perceive
nothing in the facts known to him to support the con-
clusion that his collection agent and the notary might
have acted differently.     The farm where plaintiff lived

was, perhaps, two miles from that occupied by Starr. While the note was maturing, they met occasionally and casually on the public road, at Tindall, or at a neighborhood church, but plaintiff did not know that Starr received his mail at Tindall, and it appears that he and Starr were acquainted only slightly.

While it is true that the holder of commercial paper for collection must be regarded as a separate and independent holder for the purposes of presentment, demand, protest and notice of dishonor (Renshaw v. Triplett, 23 Mo. 213; Griffith v. Ausmann, 48 Mo. 66; Ivory v. Bank, 36 Mo. 475; Bank v. Bredow, 31 Mo. 523; Young v. Hudson, 99 Mo. 102), we are willing to concede for argument that it was the duty of plaintiff to communicate to his collection agent the facts in his knowledge relating to the post office address of the endorser, but we do not sanction the contention that he was charged by law with the further duty either to notify the endorser personally of the dishonor of the note or to make inquiries in the neighborhood to ascertain the place where the endorser received his mail. The note, by its terms, being payable at Trenton, it was very natural that plaintiff should employ an agent at that place to look after its collection and that he should rely on his agent to take the necessary steps to hold the endorser. We are going far enough when we assume that it was his duty to communicate to his agent the knowledge of facts material to the subject of the employment he had or might acquire during the course of the employment. It was not his duty to perform personally the very duties he had delegated to his agent. When a person employs an agent to do a thing, he should not be held to be remiss for relying on his agent and only may be held liable for the negligent or wrongful acts of the agent in the performance of the delegated duty under the principle that what one does by the hand of another he does himself.

Imputing to the collection agent and the notary knowledge of the facts known to plaintiff, our chief concern is with the question of whether the notary exercised reasonable diligence in the giving of notice to the endorser.    Since we find in the record no controversy over material facts, the question is one of law, not of fact.    As early as the case of Linville v. Welch, 29 Mo. 203, it was decided by the Supreme Court that what is due diligence in giving notice of dishonor of a bill of exchange is a question of law when the facts are undisputed, and when they are in dispute, the court should give hypothetical instructions leaving the facts to be determined by the jury.    [Sanderson v. Reinstadler, 31 Mo. 483; Fugitt v. Nixon, 44 Mo. 295.]

Considering the case then, from the standpoint presented by the facts known to plaintiff, knowledge of which we ascribe to the notary, and by the facts acquired by the notary from his own inquiries, and treating the question of due diligence as a question of law, we next turn to consider the principles and rules by which the holder of a bill of exchange must be controlled in giving to an endorser notice of dishonor.    The liability of the endorser is conditional upon the existence of two facts, viz: (1) That the maker has made default in the payment of the bill at maturity; (2) that due notice of that fact be given the endorser.    As to what will constitute sufficient notice, it is well settled that personal service of the notice is not required.    Constructive service will suffice if reasonable diligence be exercised to make it in the manner best adapted to convey actual notice.    "Where the party to be served is a resident of the city or town where the protest is made the course required is to give him personal notice or to leave it at his dwelling or place of business.    But if he lives in the country, then a notice by mail to his post office will be sufficient."    [Barrett v. Evans, 28 Mo. 331; Sanderson v. Reinstadler, 31 Mo. 483.]    When

the endorser lives in the country and his post office address is not known to the holder, it is the duty of the latter to make reasonable inquiries in the town or city where the bill is payable and in default of more specific information, to address the notice to the post office nearest the residence of the endorser. But the holder is not justified, in all cases, in sending the notice to the nearest post office. He must act in good faith always and with reasonable diligence to learn the place where the endorser receives his mail and, learning it, must send the notice there, regardless of whether it be the nearest post office.

With these principles before us, we do not hesitate to declare as a matter of law that the notary, whose good faith is not questioned exercised reasonable diligence and acted on the information he received in a way which would have commended itself to any reasonably careful and prudent person in his situation. He made inquiries of several persons, all of whom appeared to possess some information on the subject and all expressed the belief that Spickards was the proper address of the endorser. Taking these opinions in connection with the facts that Spickards was the nearest town to the endorser's farm and was a much larger place than Tindall, we think any person in the situation of the notary would have come to the conclusion, as he did, that the notice should be sent there. Finding, as we do, that the notary acted properly, it is immaterial that the endorser failed to receive the notice within a reasonable time. That was his misfortune for which, in a sense, he was responsible. He was justified in standing strictly on his right to legal notice, but, presumably, he knew of the fact of the maturing of the note and from all the circumstances must have anticipated that notice of dishonor likely would be addressed to him at Spickards. The notice was sufficient.

The case was not tried in accordance with the views expressed and it follows that the judgment must be reversed and the cause remanded.    All concur.