(92 Misc. Rep. 359)

### McGRATH v. FRANCOLINI et al.

(City Court of New York, Trial Term. November 17, 1915.)

1. BILLS AND NOTES ⊕⇒415—NONPAYMENT—NOTICE TO INDORSER—STATUTE.

Negotiable Instruments Law (Consol. Laws, c. 38) § 179, provides that where a party adds an address to his signature notice of dishonor must be sent to that address, and that if he adds no address, notice must be sent either to the post office nearest to his place of residence or to the post office where he is accustomed to receive his letters. Section 176 declares that where notice is duly addressed and deposited in the post office, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails. Section 183 declares that notice of dishonor may be dispensed with when, after the exercise of reasonable diligence, it does not reach the party to be charged. Defendant, who then resided at 220 West 107th street, and had his place of business in the Borough of Manhattan, comprising territory served by the "New York City" post office, indorsed a note, payable at a bank in the city, without adding his address, and notice of protest was, after reasonable efforts to ascertain his correct address, mailed to him at "309 West Tenth street, New York City," where he had resided the preceding year, and which notice he never received. *Held*, that the notice, undertaking to specify "street and number," as well as a "post office" address, but not giving the correct "street and number," was a notice "sent" to the post office, and did not, as a matter of law, relieve the indorser from liability.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1156–1163; Dec. Dig. ⊕⇒415.

For other definitions, see Words and Phrases, First and Second Series, Send.]

2. BILLS AND NOTES ⊕⇒412—NONPAYMENT—NOTICE TO INDORSER—DILIGENCE.

Under Negotiable Instruments Law (Consol. Laws, c. 38) § 183, providing that notice of dishonor may be dispensed with when, after the exercise of reasonable diligence, it cannot be given to or does not reach the party to be charged, a notary, notifying an indorser of the protest of a note who endeavored to ascertain his address from the makers of the note from a former cashier, whom he thought knew some of the parties, who spent three-quarters of an hour or more in the search, and who

---

finally used the information afforded by the last issue of a standard city directory, as a matter of law, exercised reasonable diligence.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1141; Dec. Dig. ☜412.]

Action by John M. McGrath against Matilda Francolini and others. Verdict directed for plaintiff subject to the opinion of the court upon the question of law, and defendant moves to set the verdict aside. Motion denied, with stay of execution and time to make a case on appeal.

See, also, 156 N. Y. Supp. 980.

Parsons, Closson & McIlvaine, of New York City (Tompkins McIlvaine and Louis A. Stone, both of New York City, of counsel), for plaintiff.

Wayland & Bernard, of New York City (Robert W. Bernard, of New York City, of counsel), for defendant Francolini.

RANSOM, J.  [1] Determination of this cause hinges upon the single question of the sufficiency of the steps taken to give the defendant Joseph N. Francolini notice of the nonpayment of the note which he had indorsed. The instrument was made and dated in New York City, and was payable at a bank within Manhattan Borough. On April 12, 1913, it matured. The defendant Francolini on that date resided at No. 220 West 107th street, and had his place of business at No. 64 Spring street, both within the Borough of Manhattan, comprising territory served by the "New York City" post office. In indorsing the note, the defendant had not "added an address to his signature" (Negot. Instr. L. § 179), and the notice of protest was admittedly mailed to him at "309 West 109th Street, New York City," an address which had not represented his residence since late September of the preceding year. The defendant Francolini averred that he never received the notice (Union Bank of Brooklyn v. Deshel, 139 App. Div. 217, 123 N. Y. Supp. 585), and contended that, as a matter of law, on the face of the notary's certificate (Code Civ. Proc., § 923), he had been relieved from liability by the notary's act in undertaking to specify a "street and number," as well as a "post office" address, and then failing to ascertain and use the correct "street and number" of the defendant's residence on the day of protest. The soundness of this contention is matter of considerable importance in the carrying on of commercial transactions under present-day, large-city conditions. I cannot find that it has been adjudicated in any reported decision in this or any other state which has adopted the Negotiable Instruments Law, but it is apparently supported by expressions used by courts in a number of decisions. McGrath v. Matilda Francolini, Emil Mayer, et al., 156 N. Y. Supp. 980; Du Pont de Nemour Powder Co. v. Rooney, 63 Misc. Rep. 344, 117 N. Y. Supp. 220; Ebling Brewing Co. v. Reinheimer, 32 Misc. Rep. 594, 66 N. Y. Supp. 458; Webber v. Gotthold, 8 Misc. Rep. 503, 28 N. Y. Supp. 763; and perhaps also Cuming v. Roderick, 28 App. Div. 253, 50 N. Y. Supp. 1053; Id., 42 App. Div. 620, 58 N. Y. Supp. 1093; Id., 167 N. Y. 571, 60 N. E. 1109. It may be noted that the first case

above mentioned involved parties here before the court. The notary had mailed a notice of protest to "Emil Mayer, New York City," and Dr. Mayer held himself exonerated from indorser's liability because he had not received the notice and the notary failed to use the very slight diligence which would have disclosed Dr. Mayer's street and number and enabled the correct addressing of the notice accordingly. In ruling that the notary had, as a matter of law, complied with all that the statute and "due diligence" required, by addressing the notice merely to "New York City," the learned court went on to say that:

"If the holder goes further and attempts to add a particular address, he takes the risk that the address so given may be wrong, in which event the statute gives him no protection." McGrath v. Matilda Francolini et al., supra.

With all deference, I am unable to believe that a fair interpretation of the uniform statute requires the holders of commercial paper to pursue a course so much at variance with good sense and obvious business practice. The theory of our statute is that in fixing an indorser's liability upon commercial paper, the holder need not fail of his rights through inability to show that he sought out the indorser and served him personally with notice of dishonor, or even that the indorser actually received the notice at all. When a man indorsed a paper whose maturity date and other terms he had before him at the time, and refrained from indicating thereon an address to which notice to him should be sent, it seemed fair and also necessary, in the light of the complexity of modern dealings in negotiable paper, to impose upon the subsequent holder no more absolute obligation than that of reasonably diligent efforts in good faith to let the indorser know promptly of the maker's default. Accordingly a system of what has been described as "constructive service" of notice upon the indorser was devised by statute. Upon proof of the holder's compliance with its requirements, the indorser's oath that the mails never brought him notice was made immaterial. Neg. Instr. L. §§ 176, 183; Requa v. Collins, 51 N. Y. 145; Fonseca v. Hartman, 84 N. Y. Supp. 131. If an indorser wished to insure that whoever held the note would send any notice of protest to him at any particular address, he was authorized to "add an address to his signature" (Negot. Instr. L. § 179), in which event the seasonable mailing of the notice to the address so indicated became, as a matter of law, the fixed measure of the diligence required in giving notice. Burmester v. Barron, 17 Q. B. 828; Chalmers, Bills of Exchange Act (5th Ed.) pp. 155, 156; Century Bank v. Breitbart, 89 Misc. Rep. 308, 151 N. Y. Supp. 588. "Where notice of dishonor is duly addressed and deposited in the post office, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails (Neg. Instr. L. § 176), and "notice of dishonor is dispensed with" altogether "when, after the exercise of reasonable diligence, it cannot be given to or does not reach the parties sought to be charged" (Neg. Instr. L. § 183).

The two sections just quoted are, of course, to be read and construed in connection with section 179, specifying "where notice must be sent," inasmuch as a notice sent in violation of its provisions could not be

said to have been "duly addressed," and it is to the ascertainment of the requirements of section 179 that section 183 brings the operation of the rule of "reasonable diligence." Section 179 provides that if the indorser—

"has not given such address, then the notice must be sent as follows:

"1. Either to the post office nearest to his place of residence, or to the post office where he is accustomed to receive his letters. * * *"

The post office "nearest to" the defendant's place of residence on the date of protest, as well as to his place of residence up to the preceding October, was doubtless "New York City." At least, that was the "post office where he was [is] accustomed to receive his mail." The defendant contends that a notice addressed to "300 West 109th Street, New York City" was not "sent" "to the post office," that accordingly no question of "reasonable diligence" under section 183 is presented as excusing nonarrival of the notice, and that its actual nonreceipt discharges him absolutely, irrespective of the notary's diligence. This contention I cannot accept. The concepts and phraseology of these portions of the uniform statute, like those of the earlier enactments which it in some respects codifies and condenses, are truly those of rural and village or small-city conditions; but they hardly involve such implications as the defendant claims. Section 3, c. 416, of the Laws of 1857, repealed by the uniform statute in 1897 (Laws 1897, c. 612), provided that, in the absence of indication otherwise on the note, notices should be sent "directed to the indorser or drawer, at such city or town," viz., "the city or town where such indorser or drawer, from the best information obtained by diligent inquiry, is reputed to reside or have a place of business." The uniform statute struck out the requirement for direction "to the indorser * * * at such city or town," and provided for sending "to the post office" nearest to the place of residence, or "to the post office" where letters were customarily received by the indorser. I cannot agree that "sent to the post office" means addressed merely and only to the post office. When the notary received this note for protest, with no address appended to Francolini's signature, his obligation was that of "reasonable diligence" in obtaining a correct address in lieu of that which Francolini had neglected to supply. He was not bound at all hazards to ascertain correctly even the post office "nearest to his place of residence." He might have mailed the notice to the wrong "post office," as well as the wrong "street and number." Was his obligation greater as to ascertaining infallibly the "street and number" of the "place of residence" than in obtaining the correct "post office" itself, and if reasonable diligence only was required in ascertaining and stating the "post office nearest to" the indorser's "place of residence," was infallibility required in ascertaining and stating the "street and number" which constituted his "place of residence"? If the notary's full inquiry had given no indi˄ ˙ion of the street and number, town, city, or locality of residence, he need have mailed no notice at all (Neg. Instr. L. § 183). If his diligent inquiry had in fact indicated that this resident of the west side of Manhattan lived 500 miles from a remote post office in Upper Canada, the mailing of notice to that remote and wholly incorrect address would have

charged this indorser. That the information secured and the address learned through and "after the exercise of reasonable diligence" was wholly wrong, even as to the "post office," does not free the indorser (Harris v. Robinson, 4 How. 336, 11 L. Ed. 1000; Gawtry v. Doane, 51 N. Y. 84, 93; Requa v. Collins, 84 N. Y. 144; University Press v. Williams, 48 App. Div. 188, 62 N. Y. Supp. 986. When this notary's search and inquiry indicated that Joseph N. Francolini resided at No. 300 West 109th street, New York City, was he bound to accept and act upon what that inquiry disclosed as to "the post office nearest to" that "place of residence," and ignore what that same diligence disclosed as to the "street and number" address of defendant's "place of residence," within a city of 4,000,000 inhabitants? There can be no doubt that if, after diligent inquiry, he had learned only the proper post office, with no apparently dependable information as to street address, all requirements of the statute would have been met by sending merely to "New York City." Cuming v. Roderick, 28 App. Div. 253, 50 N. Y. Supp. 1053; Id., 167 N. Y. 571, 60 N. E. 1109. It is probably true that addressing merely to "New York City," if correct as to the "post office," would, either with or without inquiry or information as to "street and number" of residence, have met the bare requirements of the diligence incumbent upon the notary at bar (McGrath v. Francolini, supra; Webber v. Gotthold, 8 Misc. Rep. 503, 28 N. Y. Supp. 763; Du Pont de Nemour Powder Co. v. Rooney, 63 Misc. Rep. 344, 117 N. Y. Supp. 220); but I do not believe that this notary was bound, at the peril of discharging the indorser, to ignore what he had diligently learned as to Francolini's "place of residence" within New York City, although he might without peril act upon the same information, however incorrect, so far as concerned addressing the notice "to the post office nearest to" that "place of residence."

With the possible exception of the dicta in McGrath v. Francolini, supra, the decisions cited in behalf of the defendant do not fairly sustain his claim. Cuming v. Roderick, 28 App. Div. 253, 50 N. Y. Supp. 763, affirmed 167 N. Y. 571, 60 N. E. 1109, was decided under the provisions of the act of 1857, which I have quoted. The notice was addressed to the indorser at "66 Court Street, Brooklyn." He did not reside in Brooklyn at all, but nearer to another post office. His place of business was not at the address given. The notary's certificate claimed that No. 66 Court street was "the reputed place of residence" of Roderick. The notary admittedly "made no inquiry of any person as to the residence or as to the place of business of Mr. Roderick. All he did was to look at a directory, from which he ascertained an address of a George W. Roderick as being at 66 Court street. From that place Mr. Roderick had removed many months before." The learned court of course held this ineffectual, saying:

"In order to give an effectual and binding notice under the requirement of the statute, it was his duty to make diligent inquiry as to the residence of the indorser."

This is far from holding that, had he done so and had received information that "66 Court Street, Brooklyn," was the indorser's "place of

residence," he would have discharged the indorser by using that address, however incorrect it subsequently proved in fact.

In Du Pont de Nemour Powder Co. v. Rooney, supra, there was no proof of any effort or inquiry to ascertain the correct address, and Mr. Justice Seabury said that:

"If the plaintiff, after using due diligence, was unable to ascertain the indorser's residence or place of business, I think that, under the circumstances disclosed in this case, the notice would have been sufficient if it had been addressed to the defendant at 'New York City.'"

By making no inquiry and merely mailing the notice to the indorser, in the care of the maker, at the maker's street address, was of course no compliance with the requirements of sections 183 and 179. In so holding, the court emphasizes "the requirement that it [the holder] should use due diligence to ascertain the proper address of the holder." If the notary had done that, could he use more of the "proper address" than the post office only at the peril of absolute discharge of the indorser if the information proved in any respect erroneous?

Webber v. Gotthold, 8 Misc. Rep. 504, 28 N. Y. Supp. 763, merely holds that where no address is added, mailing to the indorser at "New York City" is sufficient. In Ebling Brewing Co. v. Reinheimer, 32 Misc. Rep. 594, 66 N. Y. Supp. 458, the notice was sent to a street and number in New York City at which the indorser did not reside, have a place of business, or get mail. "No attempt was made to prove that the plaintiff had used any diligence or made any effort to ascertain the place of residence or business of the indorser, which could have been easily discovered." These facts were held to place upon the holder, rather than the indorser, "the risks of the mails," and the plaintiff could hold the indorser liable only by showing that he actually received the notice: Neg. Instr. L. § 179.

[2] I conclude, therefore, that the indorser was not, as a matter of law, necessarily exonerated from liability by the mere fact that the notary's diligent search led him to use a street and number address which, at the time of mailing, was no longer Francolini's "place of residence." The question remains under all such circumstances as to the notary's actual diligence. Upon undisputed facts, as here, this is a question of law for the court (Requa v. Collins, 51 N. Y. 145; University Press v. Williams, 48 App. Div. 188, 62 N. Y. Supp. 986; Vogel v. Starr, 132 Mo. App. 430, 112 S. W. 27), and both sides moved for direction of a verdict accordingly. The notary, protesting the note at bar, made reasonable effort and adequate inquiry, and then obviously acted upon the best information obtained from that inquiry. He did not merely mail haphazard. University Press v. Williams, supra. He did not rush into using the address which his first casual inquiry intimated might be correct. He did not merely look in a directory and rush into use of the address there indicated. Bacon v. Hanna, 137 N. Y. 382, 33 N. E. 303, 20 L. R. A. 495. He endeavored to ascertain the defendant's address from the makers of the note; he tried to reach a former cashier whom he thought knew some of the parties; he enlisted the note teller and another employé in finding the

address; they spent three-quarters of an hour or more in the search, and finally used the information afforded by the last issue of the standard Manhattan directory. This was sufficient. Negot. Instr. L. § 183; Gawtry v. Doane, 51 N. Y. 84, at 93; Requa v. Collins, 51 N. Y. 145, at page 147; Bacon v. Hanna, 137 N. Y. 382, 33 N. E. 303, 20 L. R. A. 495. This conclusion seems a salutary one, in the handling of commercial paper in modern cities. The notary need not necessarily mail his notice without the indorser's street address, on peril of discharging the indorser, should it appear the indorser had moved on any previous day. The question of his reasonable efforts to ascertain the correct address will remain one for determination in the particular case.

The motion to set aside the verdict directed in favor of the plaintiff, subject to the opinion of the court upon the question of law, is denied. The defendant may have 10 days' stay of execution and 30 days within which to make a case on appeal. Submit order on 1 day's notice.