### Bank of Geneva vs. Howlett.

Where an endorser resided in one town within two and a half miles of a post
office, and carried on business in another town where there was also
a post office at the distance of four and a half miles from his residence
and he received letters and kept a postage account at the latter office, it
was held that notice of protest of a note might be sent to either plac
It is not indispensable that notice should be sent to the office nearest to the
residence of the party, nor even to the town in which he resides; it is
sufficient if it be sent to the office to which he usually resorts for his let-
ters.
A mistake in the name of the post office to which a notice of protest is
directed does not render the notice inoperative, where it appears that
the post office is as well known by one name as the other; a notice
directed to Geddesburgh when it should have been Geddes, was accor-
dingly holden good.

This was an action of assumpsit against the defendant as
the endorser of a promissory note, tried at the Onondaga cir-
cuit in February, 1828, before the Hon. Enos T. Throop,
then one of the circuit judges.

The defendant was the endorser of a promissory note for
$1250, due at the bank of Geneva on 25th March, 1826,
which was protested for non-payment; and the principal
question in the case was, whether due notice of non-pay-
ment was given to the defendant. The cashier of the bank
testified that he as notary protested the note; that when it
was presented for discount he was a teller in the bank and
received it, and inquired of the person who brought it for the
nearest post office to the residence of the defendant, and was
informed it was Geddesburgh, of which he at the time made
an entry. When the note was protested, he directed the no-
tice of protest to the defendant at Geddesburgh and put it

into the post office. He did not recollect whether he super-
scribed the name of the *county* on the notice of protest, but
such was his usual custom. The note in question was the
last of a series of notes endorsed by the defendant for the
same drawer; the first note was payable in 90 days, and the
ninety-third day from its date was Sunday, the discount upon
which was taken for 93 days; upon the note in question the
interest was taken in advance, and such was the invariable
custom of the bank.

From the evidence on the part of the defendant and the fur-
ther testimony on the part of the plaintiffs the following facts
appeared: The defendant resided, and has resided for up-
wards of 20 years on the same farm, in the *town of Onondaga;*
there is not a post office of the name of *Geddesburg* in this
state or in the United States, but there is a post office of the
name of *Geddes* in the *town of Salina,* in Onondaga county,
in this state, and one of the name of *Gettysburgh* in Ad-
ams county, Pennsylvania. *Geddes* is known as well by the
name of *Geddesburgh* as *Geddes,* and packages in the mails
are as frequently directed to *Geddesburgh* as to *Geddes,* ex-
cept from the large offices. There is a post office in the *town
of Onondaga,* called *Onondaga Hill or C. H.,* from which the
defendant resides about two and a half miles; the distance
from his residence to *Geddes* is four and a half miles. In the
year 1826, and for several years previous thereto, the de-
fendant was engaged in the making of salt and in the slaugh-
tering of beef at *Geddes* and in the neighborhood thereof,
which business he carried on by the aid of partners; he also
had salt works at *Geddes* which he carried on individually,
and which he superintended continually in the fall of 1825
and winter of 1826. The letters directed to the *firms* of which
he was a member and in which his name appeared, were
always directed to *Geddes;* letters sent to the defendant *in-
dividually* were generally directed to the post office at *On-
ondaga Hill or C. H.;* he received but a few private letters at
the post office at *Geddes,* but *he kept a postage account there,*
and he or his sons were in the habit of calling at that office
for letters. And in April, 1826, he received two letters at that

Vol. IV.                    42

office, post marked at Geneva, (the location of the Geneva bank,) on the 16th and 25th of April, one of which was from the cashier of the bank on the subject of the note in question, reminding him that it was over due and must be attended to, and the other was from the president of the bank.

The judge charged the jury, that the plaintiffs had a right to take interest in advance on the note in question, and that the taking of interest on the first note for the whole number of the days of grace, although the last day was Sunday, did not render the transaction usurious; that the only question for their consideration was, whether a notice was sent to the defendant at *Geddesburgh*, Onondaga county, and if they were satisfied that it was sent, the plaintiffs were entitled to a verdict. The defendant excepted and the jury found a verdict for the defendant; which was now moved to be set aside.

*C. Butler & S. M. Hopkins*, for plaintiffs.

*J. A. Spencer*, for defendant.

*By the Court*, SUTHERLAND, J. The verdict is clearly against the weight of evidence. Charles A. Cook, the cashier and notary of the bank, testified that he regularly protested the note on the day it became due, and sent notice thereof on the same day to the defendant, directed to him at *Geddesburgh*, and put the notice in the post office at Geneva. He did not recollect whether he put the *county* on the notice of protest, but it was his custom to do so.

It was shewn, on the part of the defendant, that the legal name of the post office near which the defendant resided was *Geddes*, not Geddesburgh; but all the witnesses concurred in stating that it was known as well by the one name as the other, and that at least half the people called it *Geddesburgh*; and Mr. Earle, the postmaster at Onondaga Hill, within a few miles of Geddes, testified that until lately he supposed the name of the post office was Geddesburgh, and if a letter was put in his office directed to *Geddesburgh*, he should forward it to *Geddes*. He further stated that there was no post office, either in this state or in the United States, of the name of Geddesburgh. John Wilkinson, the postmaster at

*Syracuse,* testified that packages in the mails were as frequently directed to *Geddesburgh* as *Geddes,* except from the large offices. Upon this testimony there can be no question, if the notice was directed to Geddesburgh without the name of the county, that it was sent to Geddes. But the fair intendment from the testimony of the notary is, that the name of the county was also part of the superscription. It was his general custom so to direct his notices, and no circumstance is stated to induce the belief that he departed from it in this instance. The verdict therefore under the charge should have been for the plaintiff.

The judge decided, as a question of law, that the notice was good, if it was sent to the Geddes or Geddesburgh postoffice. It was properly assumed as a question of law, and the opinion of the judge was correct.

The evidence shews that although the defendant resided a mile and a half or two miles nearer to the post-office at Onondaga Hill than to Geddes, still that Geddes was his place of business, where he carried on the manufacturing of salt and the slaughtering and packing of beef; that he received letters at both offices. More letters for him individually were received through the office at Onandaga C. H. than at Geddes; but all the company letters were directed to the latter office. The defendant or his sons were in the habit of calling for letters at the Geddes office, and he kept a postage account there. Under such circnmstances, notice directed to either office would be good. It is not indispensable that the notice should be sent to the office nearest to the residence of the party, nor even to the town in which he resides. It is sufficient if it be sent to the office to which he usually resorts for his letters, and where he would probably receive it as soon as at the office nearer to him. (*Reïd* v. *Payne,* 16 Johns. R. 218. 1 Peters, 578. 10 Johns. R. 411. 11 id. 490.) When a party has a dwelling house and counting room, or other place of business in the same place or town, notice sent to either is sufficient; (*Bank of Columbia* v. *Lawrence,* 1 Peters, 582, 3;) and it cannot be material whether the residence of the party and his place of business be in the same town or not, if it appears that he is in the daily or constant

NEW-YORK,
May, 1830.

habit of receiving letters at both places. The notice therefore was sufficient, and the defendant was legally charged. It has been decided by this court that deducting interest by way of discount at the rate of seven per cent., upon commercial or business paper, is not usurious. (*Manhattan Company* v. *Osgood*, 15 Johns. R. 168. *Bank of Utica* v. *Wager*, 2 Cowen, 766, 7. *Bank of Utica* v. *Phillips*, 3 Wendell, 408. See also *Fleckner* v. *The Bank of the United States*, 8 Wheaton, 838. 4 Yeates' Rep. 220, 223. 9 Mass. R. 49. 3 Bos. & Pul. 154.)

A new trial must be granted, on the ground that the verdict is against evidence.