VAN VECHTEN and others *against* PRUYN.

Where the known residence of an endorser is in the village where the note is held and made payable, notice of its dishonor cannot be served through the mail, directed to him at his place of business in another town.

The notice should be served on him personally, or by leaving it at his residence or place of business.

Accordingly, where the endorser of a note held and payable in Catskill, resided with his family there, but his place of business was in New York, where he usually spent four days in the week and received a portion of his letters ; *Held,* that a notice of non-payment, deposited in the post-office at the former place, addressed to him at the latter, was not good service.

Van Vechten *v.* Pruyn, 9 How. Pr. 222, affirmed.

APPEAL from a judgment of the supreme court, upon a case made by the parties, and submitted to the court pursuant to § 372 of the Code of Procedure. The judgment was rendered at a general term in the 3d district, in favor of the defendant. The plaintiffs appealed to this court.

· The sole question was whether the defendent was duly charged as the endorser of three promissory notes made by one J. V., payable at the Catskill Bank to the order of and endorsed by the defendant. The notes were respectively discounted by the Catskill Bank, and each at maturity was duly presented at that bank for payment, which was refused ; and notice, in proper form, of the dishonor of each was, on the day when it matured, deposited by the notary who presented the same for payment in the post-office in the village of Catskill, addressed to the defendant at the city of New-York. The bank was located and the notary resided in the village of Catskill. Prior to and when the notes were made, and at and after the time they matured, and when the notices of dishonor were served as aforesaid, the defendant and his family resided in the village of Catskill, within two hundred yards of the bank, and such residence was known to the officers of the bank

3 KERN.—35

and the notary. Prior to the date of the notes, the defendant and the maker, formed a co-partnership, and thence, until after they matured, carried on business as attorneys and counselors under a firm name, in the city of New-York, occupying an office at 39 Wall-street. During this period the defendant had no other place of professional or other general business than the office in New-York. The firm had a letter box at the New-York post-office at which their business letters, and also letters addressed to the members of the firm individually, were received ; but the defendant had no separate letter box in that post-office. The case stated that the defendant did not admit that all letters addressed to him at New-York were received by him ; and it did not appear whether the notices as to the notes in suit, addressed to him there, were ever received or not. The defendant was accustomed during this period to receive letters and papers at the post-office in Catskill, where he kept a postage account and letter box. The defendant was usually at his office in New-York from Monday evening to Friday evening of each week, and the residue of the time he spent with his family at Catskill. The notes were owned by the Catskill Bank when they matured, and the plaintiffs had succeeded to the rights of the bank as to the same ; there was nothing on the notes indicating where notice of dishonor should be sent.

*L. Tremain*, for the appellant.

*J. H. Reynolds*, for the respondent.

COMSTOCK, J. The precise question in this case is whether the endorser of a note, whose known residence is in the same village where the note is held and protested, and who is at home three days in the week, can be charged by a notice of protest directed to him by mail in a distant town or

city where his place of business is, where he spends the residue of his time and receives letters and papers, there being no evidence that the notice actually reached him in due time so as to render it equivalent to personal service. I can find no authority for charging him by such a notice, and I think no principle can be urged in favor of the proposition.

It is well settled that when the endorser resides at the place of the presentment and dishonor of the note, the notice must be served on him personally, or what is deemed equivalent, must be left at his dwelling or place of business, if he has one there. (*Ireland* v. *Kip*, 10 *Johns.*, 490 ; *Ransom* v. *Mack*, 2 *Hill*, 587 ; *Sheldon* v. *Benham*, 4 *id.*, 129 ; *Smedes* v. *Bank of Utica*, 20 *Johns.*, 372.) This is the language of all the authorities ; and it is pertinent to add in this connection that originally service through the post was not allowed in any case, wherever the endorser might reside. (*Ransom* v. *Mack*, *supra*.) The rule was relaxed when the person to be notified resided in a different place from the one where the note was presented. In such cases it was allowed to send by the post, and so the law is now well settled. This modification of the old rule has also been held to embrace the case where the endorser resides in a distant part of the same town nearer to another post-office at which he usually receives his letters, and there is a regular mail communication between the two places ; the test being whether there is a regular communication by mail from the one place to the other. (*Ransom* v. *Mack*, *supra*.)

Further than this I do not find that the rule requiring personal service has ever been relaxed, and I see no reason why it should be further relaxed. The service which the rule requires is of a higher and safer degree than service by mail. Service in the latter mode when allowed is complete, by a mere deposit of the notice in the post-office in proper time and properly directed, whether it ever reaches the endorser or not. All that the law requires of the hold-

er is due diligence in mailing the notice, and he is not responsible for any accidents which may prevent its due transmission and delivery. Hence the inferiority of this mode of service. It is less safe by just so many degrees as the mere probability of transmission by mail and delivery from the post-office is below the certainty of a personal notification. And this is the reason of the rule which has been stated. A relaxation is admitted to avoid the inconvenience of making a journey, or sending a messenger to another place more or less remote. In the present case the endorser was known to reside within two hundred yards of the bank where the note was protested, and as service clearly might have been made on him there, and without the inconvenience suggested, I think the rule requires that it should have been so made.

It is urged on behalf of the plaintiffs that notice may be served either at the residence of the party to be charged or at his place of business, and cases are cited to the proposition. There is an obscurity in the proposition as stated when the service is by mail, and it is of that we are speaking; it is not made either at the residence or place of business, but it is made, as we have already seen, at the place of the presentment and dishonor of the note, by depositing the notice in the post-office properly directed. More accurately stated, however, the proposition is true and is fully sustained by the authorities, but it does not help the present case. When the service is not by mail the notice may be left indifferently at the endorser's dwelling or place of business, and within this principle I presume the notice would have been sufficient, if actually left at the defendant's place of business in New-York. So when the service is by mail, the law is indifferent whether the notice is directed to the endorser's residence or to the place of his business where he receives letters. (*Montgomery County Bank* v. *Marsh*, 3 *Seld.*, 481 ; *Downer* v. *Remer*, 23 *Wend.*, 620 ; *Reid* v. *Payne*, 16 *Johns.*, 218 ; *Bank of Geneva* v. *How-*

*lett*, 4 *Wend.*, 328.) But this is as far as the cases go. The law is not indifferent as to the mode of service. It does not say that the holder may elect between personal and mail service, because there happens to be a place of business to which the mail goes, so long as there is also a place of residence at which service cannot be made through the post-office, but must be made personally.

The case of *The Seneca County Bank v. Neass* (3 *Comst.*, 442), has been cited, but it does not reach the question. There the endorser received his letters at the post-office in the village where the note was protested, but he resided in another town, in which were two offices, and it did not appear that the holder knew anything of him except his residence in that town. It was held that notice sent by mail to those offices was a good service. That case was put in this court very much upon the act of 1835 (*Stat.*, *p.* 152), which provides that in all cases where notice *may be served by mail*, it shall be sufficient to direct it to the residence of the endorser, unless he has himself specified some other post-office to which it is to be addressed. The law was substantially the same before the act of 1835. That statute was passed to obviate the inconvenience arising from an erroneous decision (*Cuyler* v. *Nellis*, 4 *Wend.*, 398), which was afterwards overruled in the court of errors (*Downer* v. *Remer*, 23 *Wend.*, 620). The case last mentioned, as well as that of *The Seneca County Bank* v. *Neass*, go upon this doctrine, clothed with statutory authority by the act of 1835, that where the holder knows the endorser's residence, he may send the notice to that address, and is not put upon inquiry whether there is a nearer or some other post-office at which the endorser receives his letters. But neither of these cases is any authority for sending a notice by mail, away from the endorser's known residence, to his place of business elsewhere, or for serving by mail at all when he resides at the very place where the note is protested.

The Judgment should be affirmed.

JOHNSON, J.   The exact circumstances of this case have not, as far as I am aware, existed in any of the reported cases.   The notes were payable at the Catskill Bank in the village of Catskill, and that was the permanent residence of the defendant who was the endorser.   He was a householder in the village, and his family resided there continuously. He was, however, engaged in the practice of the law in the city of New-York, and was, as the case states, at his office in that city from Monday night to Friday night in each week; the residue of the time he was generally with his family in Catskill.   The law firm of which he was a member had a box in the New-York post-office, and he received business and private letters there, and that city was the only place of his professional or other general business. He had also a box in the post-office at Catskill and there received letters and papers.   Under these circumstances, notices of protest upon the notes in question were addressed to him at New-York, and were mailed at Catskill.   The single question is whether the notices were so sent as to charge him.

Where the party entitled to notice has his residence and his house of business in the place where notice is to be given, notice may be given to him personally or may be left either at his dwelling house or his place of business.   Where he resides in one place, transacts business in another, and receives letters at each, and notice is to be given by mail from a third place, it may be directed either to his place of residence or business.   (*Bank of Geneva* v. *Howlett*, 4 *Wend.*, 328 ; *Montgomery Co. Bank* v. *Marsh*, 3 *Seld.*, 481.)

In *Seneca Co. Bank* v. *Neass* (3 *Comst.*, 442), the bank which gave the notice was in Waterloo, and the endorser resided in the adjoining town of Fayette, but usually received and mailed his letters in Waterloo ; it was held that notice by mail directed to Fayette was good.   In *Ransom* v. *Mack* (2 *Hill*, 587), the bank was in the village of Sacketts Harbor in the town of Houndsfield, and the

Van Vechten *against* Pruyn.

endorser lived in that town seven miles from the bank, and there was but one post-office in the town and that in the village of Sacketts Harbor, and the endorser received his letters at a post-office in another town nearer to his residence than Sacketts Harbor, it was held that notice addressed to the endorser at the office where he usually received his letters would be sufficient.

It seems therefore to be settled that, where notice is not to be given by mail, it may be left either at the place of residence or of business of the endorser. Where it is to be given by mail, it may be directed either to his place of residence or of business, where they are different. It may also be given by mail to his place of residence, no matter where he is accustomed to receive his letters, and it may be given by mail to the place where he usually receives his letters, notwithstanding his residence is in the same town but at a place distant from that where the letter is mailed. These cases, I think, imply an absolute option on the part of the party seeking to charge the endorser to give the notice either at the place of residence or of business of the endorser, when, by the exercise of that option, a less advantageous mode of giving notice will not be introduced. Where the service is by mail, the duty of the holder is discharged by depositing the notice in the post-office, properly directed. Whether it ever reaches the endorser or not, his liability is fixed. On the other hand, where personal notice is to be given, the obligation is upon the holder to leave the notice either with the party to be charged or at his residence or place of business. In these cases, there is no risk in transmission to be borne by the endorser. I find no case in which the endorser has been deprived of the right to personal notice, when his residence was in the same place where notice was to be given, and it seems to be a sufficient reason against relaxing the rule, that thereby a mode of notice less advantageous to the endorser would be introduced. The judgment should be affirmed.

MITCHELL, J., delivered an opinion in favor of reversing the judgment of the supreme court, and ordering judgment in favor of the plaintiffs for the amount of the notes.

All the other judges were in favor of affirmance.

Judgment affirmed.