(63 App. Div. 100.)

### MOORE v. ALEXANDER et al.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. BILLS AND NOTES—INDORSEMENT—INDEMNITY—DEMAND—NECESSITY.
     Allegations that the maker of the note had transferred all of his property to a third person to indemnify the indorser were not sufficient to excuse the holder from making a demand on the maker and from serving notice of nonpayment on the indorser, in the absence of an allegation that the indorser had knowledge of the transfer or had accepted it.

2. SAME—MAKER'S INSOLVENCY.
     The fact that a corporation which executed a note was insolvent did not excuse the failure of the holder from making a demand on the corporation, and from serving notice of nonpayment on the indorser.

Appeal from special term, New York county.

Action by George W. Moore against James W. Alexander and others, as executors of the estate of Henry B. Hyde, deceased. From a judgment in favor of defendants (68 N. Y. Supp. 888), plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Mathewson, for appellant.
Charles B. Alexander, for respondents.

INGRAHAM, J. The complaint alleges that on or about January 15, 1891, the Pacific Coal & Coke Company, a corporation of the state of Colorado, made and delivered to Henry B. Hyde a certain

promissory note, dated Denver, Colo., January 15, 1891, in and by which said corporation, for value received, promised to pay to the order of said Henry B. Hyde, six months after date, $15,000 at the State National Bank of Denver, with interest; that at the time of the making and delivery of the said note by said Pacific Coal & Coke Company to said Henry B. Hyde, and as collateral security for the payment thereof, and also to effectually secure and indemnify the said Henry B. Hyde for or on account of any assignment, indorsement, or guaranty of said note, said company granted, assigned, sold, and conveyed unto William R. Varker, trustee, all its property and estate of every kind and description; that on or about the 1st day of June, 1894, the said Henry B. Hyde, in consideration of the sum of $16,876.56 to him in hand paid by the Colorado Fuel & Iron Company, also a corporation of the state of Colorado, duly indorsed, and delivered so indorsed, said promissory note to said the Colorado Fuel & Iron Company, said sum being the full amount of said note, principal and interest; that no demand for the payment of said note was made upon the Pacific Coal & Coke Company, nor has any notice of nonpayment thereof been given by the Colorado Fuel & Iron Company to said Henry B. Hyde, for the reason that the Pacific Coal & Coke Company, under and by virtue of said trust deed, had assigned as aforesaid and transferred to said Henry B. Hyde at the time of the execution of said note all its property and property rights as security for said note, and did not at that time possess, and never thereafter obtained or held, any property whatever, other than that embraced within the said trust deed, and that, at the time of the indorsement and delivery of said note by said Hyde to the Colorado Fuel & Iron Company, the Pacific Coal & Coke Company was practically defunct, and had not then for a long time, nor has it since then, exercised any of its corporate powers; and that said omission of demand and notice did not and could not operate to the injury or damage of said Henry B. Hyde as indorser or otherwise.

This action was commenced on the 20th of December, 1899, and to the complaint the defendants demurred on the ground that it does not set up facts sufficient to constitute a cause of action. It seems to be conceded in this court, as it was in the court below, that the complaint was fatally defective unless the failure of the holder to demand payment of the note from the maker was excused. The transfer of the note by Hyde to the Colorado Fuel & Iron Company is alleged to have been made on the 1st of June, 1894, long after the note had become due. It was at that time, therefore, a discredited instrument, having been nearly three years overdue. The effect of the indorsement and delivery for a valuable consideration of an overdue note was not discussed. The rule, however, is generally stated in Daniel on Negotiable Instruments (volume 1, § 724a), that "after maturity negotiable paper still passes from hand to hand ad infinitum until paid. Moreover, the indorser, after maturity, writes in the same form and is bound only upon the same condition of demand upon the drawer and notice of nonpayment as any other indorser." The indorsement of a negotiable instru-

ment is a fresh and substantive contract, by which the indorser engages that the bill or note will be accepted or paid, as the case may be, according to its purport; but this engagement is conditioned upon due presentment or demand and notice. Daniel, Neg. Inst. § 669a. The obligation of an indorser is therefore essentially one which only arises upon the refusal of the maker to pay when the note is presented and payment demanded. It is conditioned upon the presentation and demand, and, in the case of a note transferred before maturity, the right to hold an indorser is forever lost, unless the note is presented to the maker at maturity, payment demanded, and notice given to the indorser. I assume that, as to paper indorsed and transferred after maturity, no liability of the indorser would arise until the note had been presented to the maker, and the maker had refused to pay, of which notice was given to the indorser. The question that seems to be presented is whether, by the indorsement and transfer of the note by Hyde, he became at once liable to the holder, although no demand was made upon the maker. If he is liable now upon these allegations of the complaint, he would have been liable the day after the note was indorsed and transferred; and yet it seems to be assumed by all of the authorities that the obligation of an indorser, whether the note is transferred before or after maturity, is conditioned upon the presentation of the note to the maker, with a demand for payment.

The plaintiff relies upon a class of cases of which Bank v. Griswold, 7 Wend. 165, seems to be the leading case in this state. That was a case of a transfer of a promissory note before maturity, and the question arose upon a demurrer to the declaration. The action was against the defendant as an indorser. The declaration, after alleging the making, indorsement, and delivery of the note, alleges that after the making of the note, and before it fell due, the makers of the note transferred certain goods, chattels, and effects, and assigned certain notes, accounts, debts, and demands, the property of them, the makers, to the defendant and one Ford, upon trust to dispose of the property, and to collect the debts, and out of the proceeds thereof, after deducting the charges of the trust, to pay the debts of the makers in a certain order, and first to pay and satisfy all notes and debts for which the defendant and Ford, or either of them, were bound as sureties or indorsers; that the value of the property and debts transferred far exceeded the charges of the trust and the amount of all notes and debts for which the defendant and Ford were bound as indorsers or sureties; and after averring that the defendant had not sustained any damage by reason of the note not having been presented and demand made, and his not receiving notice of nonpayment, the plaintiffs allege promise to pay. The court states the general rule that the undertaking of an indorser is to pay the note upon default of the maker, on the condition that it is demanded of the latter at maturity, and reasonable notice of the refusal is given to him. Then attention is called to an exception to the general rule, where the indorser, at the time of the indorsement, received from the maker property equal to the amount of the indorser's liability to the maker, or a transfer

of all the property of the maker, that in such a case the indorser was not entitled to require a demand and notice. That was put upon the ground that, by accepting the property of the maker to secure the payment of the note, the indorser became the debtor. Mr. Justice Bailey, in Brown v. Maffey, 15 East, 222, places this exception upon the ground that it would have been a fraud in the indorser to call upon the maker of the note, because before it became due the maker had deposited effects in his hands to answer the amount of the indorsement, and therefore he had no right to complain of the want of notice. So, in Bond v. Farnham, 5 Mass. 170, 4 Am. Dec. 47, where, before the note became due, the maker became insolvent, and transferred to the indorser all his property to secure him against all the notes he had indorsed, exclusive of the plaintiff's, it was held that the indorser had no right to insist upon demand or notice under the circumstances, as the demand would be fruitless, the indorser having secured all the property the maker had; but in this case the rule is recognized that the mere insolvency of the maker, even at the time of the indorsement, and that known to the indorser, would not be a sufficient excuse for a failure to demand and give notice thereof. This rule, so far as I have been able to observe, has been confined to cases where the indorsee, before maturity of the note, held sufficient of the maker's property to secure the payment of the note, so that it would be a fraud to demand payment of the maker, or where the maker has transferred all of his property to the indorser, the acceptance of which by the indorser is conclusive evidence that the indorser has taken all the available steps to secure himself, had he notice of the fact that the maker had refused to pay. In none of the cases that I have examined has demand and notice been dispensed with where no property of the maker has come to the hands of the indorser. It would certainly be extending the rule much further than it is extended in any reported case to which my attention has been called to hold that the obligation of an indorser, which, by its nature, is contingent upon the refusal of the maker to pay, and notice thereof, became an absolute obligation by reason of the maker transferring property to a third person to hold to secure the indorsement, when such transfer is without knowledge of the indorser, and has never been accepted or acquiesced in by him. The object of requiring this demand and notice was, as stated by Mr. Justice Nelson in Bank v. Griswold, supra, "to advise the indorser of his situation, that he is to be held responsible, so that he may take such steps as he thinks proper to indemnify himself against his liability; it is then his business to take up the note and obtain security from the maker,"—and it is only when, because of some act of the indorser, the nonpayment by the maker and a failure of notice to the indorser cannot possibly operate to the injury of the indorser, that the omission is excused. The mere fact of insolvency of the maker is not enough. The fact that the maker of this note had become a "practically defunct corporation," whatever that may mean, is not enough. The fact which would excuse this presentation must, as I understand it, be some act in which the indorser participated, by which

the knowledge of the fact that the maker would not pay the bill could be of no benefit to him. In this case there is no allegation that the indorser had knowledge of this transfer of the property to a third person, or ever accepted such transfer as security for the payment of the note.

The point is not raised by the defendant that this contract of indorsement was discharged by the long delay in which no demand was made upon the maker of the note. The note having been transferred after maturity, it became, in effect, a demand note, and I do not see why, in order to hold the indorser, the holder was not bound to present it within a reasonable time. The note was indorsed by Hyde on the 1st of June, 1894, and Hyde died on the 2d of May, 1899, nearly five years after the transfer. It may well be that within this five years the maker has become practically defunct, but certainly it does not appear that if the note had been presented for payment within a reasonable time, and Hyde had notice of that fact, he could not have taken proceedings against the corporation, stockholders, or directors, by which to some extent, at least, he could have protected himself from liability. It is, however, well settled that the exception upon which plaintiff relies is based upon a transfer of the maker's property to the indorser. Such a transfer is not alleged.

It seems to follow, therefore, that these allegations failed to bring the case within the exceptions by which a demand and notice of nonpayment is excused; and we think the judgment appealed from was right, and should be affirmed, with costs. All concur.