(80 Misc. Rep. 475.)

## In re MANDELBAUM et al.

### (Surrogate's Court, New York County. April, 1913.)

1. EVIDENCE (§ 352*)—DOCUMENTARY EVIDENCE—DIRECTORS' MEETINGS—CORPORATE MINUTES—COPY.

   The original minutes of a corporation may be used to prove the holding of a directors' meeting, but not the secretary's certified copy of the minutes.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1398–1403; Dec. Dig. § 352.*]

2. WITNESSES (§ 392*)—CROSS-EXAMINATION.

   A certified copy of the minutes of a directors' meeting, made by the secretary of the corporation, when introduced for the purpose of impeaching him, to show his previous inconsistent statement, is not evidence of the fact of the meeting.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1249–1251, 1257; Dec. Dig. § 392.*]

3. BILLS AND NOTES (§ 397*)—INDORSERS—NOTICE OF DISHONOR—NECESSITY.

   The bankruptcy of the maker of a promissory note does not dispense with the necessity of notice to the indorser.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1029–1044; Dec. Dig. § 397.*]

4. EXECUTORS AND ADMINISTRATORS (§ 99*)—POWER OF EXECUTORS—WAIVER OF PROTEST.

   Executors cannot waive notice of protest upon a note made by their testatrix, nor by any act create a liability against the estate which did not already exist.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 415, 417, 754; Dec. Dig. § 99.*]

5. BILLS AND NOTES (§ 421*)—LIABILITY OF INDORSER—NOTICE OF DISHONOR.

   Under Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 179, providing that, where a party has added an address to his signature, notice of dishonor must be sent to that address, but, if he has not given such address, then the notice must be sent either to the post office nearest to his place of residence, or to the one where he is accustomed to receive his letters, or, if he resides in one place and has his place of business in another, notice may be sent to either, notice of protest of a promissory note, mailed to the place of business of a corporation in which the indorser was a director and stockholder, but not shown to have been received, is not sufficient, in the absence of proof that the indorser there made his office and received his mail; the evidence merely showing that the indorser was present at that place upon the organization of the corporation.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1173, 1178–1187; Dec. Dig. § 421.*]

Judicial settlement of the accounts of Max Mandelbaum and Gustave Friedeberger, as executors of Emilie Rosendahl, deceased. Upon claim by the European-American Bank. Claim disallowed.

A. Welles Stump, of New York City, for claimant.
A. L. Mandelbaum, of New York City, for executors.
Samuel Markewitch, of New York City, special guardian.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

FOWLER, S.  The executors of Mrs. Emilie Rosendahl have disputed the liability of the estate of testatrix upon a claim for $2,391.16, filed by the European-American Bank.  The claim arises by reason of the indorsement of two notes by the testatrix, and her executors reject the same solely upon the plea that proper notice of dishonor was not given to their testatrix.  By consent the issue is now before the surrogate for determination upon the final judicial settlement of the executors' account.

The earlier note bears date June 14, 1910, and matured in four months, and the other note is dated July 28, 1910, and matured August 28, 1910.  The maker of both instruments is A. Rodena & Co., a domestic corporation, whose place of business up to the middle of August, 1910, when a receiver in bankruptcy was appointed, was at No. 83 Reade street, New York City.  The corporation there occupied the two upper floors of a five-story building.  In December, 1909, the late Mrs. Emilie Rosendahl, as well as her husband, was one of the incorporators of A. Rodena & Co., and she subscribed for one share, of the par value of $100, out of a total authorized issue of $40,000.

[1, 2]  The evidence discloses that the residence of Mrs. Rosendahl was No. 315 West Fifty-Eighth street, New York City, and that she was not engaged in business, unless as already stated.  The secretary of the corporation testified that Mrs. Rosendahl was neither a stockholder nor a director, and that no directors' meeting was held.  Counsel for the claimant, however, on cross-examination offered in evidence, for the purpose of impeachment, a certificate of the corporation's minutes under the secretary's hand and under the corporate seal, which certificate was delivered to the claimant bank when the corporation opened a bank account with it.  In such certificate it is recited that Mrs. Rosendahl attended a directors' meeting on January 17, 1910.  It does not appear therefrom where the meeting was held, and no attempt was made to offer the original minute book of the corporation.  The evidence relied upon to establish that the defendant attended the directors' meeting at No. 83 Reade street is not competent.  The original minutes of the corporation could have been used to prove the corporate meeting (Rudd v. Robinson, 126 N. Y. 113, 26 N. E. 1046, 12 L. R. A. 473, 22 Am. St. Rep. 816; Leonard v. Faber, 52 App. Div. 499, 65 N. Y. Supp. 391; Woodhaven v. Brooklyn Hills Improvement Co., 69 App. Div. 489, 74 N. Y. Supp. 1023; Abbott's Trial Evidence [2d Ed.] 58), but not the secretary's certified copy (Abbott's Trial Ev. supra, 63).

Counsel for the claimant stated that the certificate was offered for the purpose of impeachment, and consequently a further question arises whether a paper signed by a witness and offered in evidence upon his cross-examination to show his inconsistent statement is evidence of the facts therein recited.  It has been authoritatively settled that it is not.  To attach probative value to such an ex parte statement, unsubstantiated by the witness' oath, would sanction hearsay evidence.  Sloan v. N. Y. Central, 45 N. Y. 127; Plyer v. German-American Insurance Co., 121 N. Y. 689, 24 N. E. 929; Wigmore, Evidence, §§ 1018, 1043; McKiernan v. Hall, 65 Misc. Rep. 138, 121 N. Y. Supp. 87.

[3] The notices of protest under the seal of the notary giving it, offered in evidence by the claimant, recited that the notices were duly mailed to the decedent at "83 Reade street, New York City, the above-named place being the reputed place of residence of the person to whom said notice was so addressed and the post office nearest thereto." The notary offered as his reason for addressing the notice there that he believed the indorser was interested in A. Rodena & Co. At least a week before the notes were protested the corporation went into the hands of a receiver, and the latter assumed possession of the corporation's property at No. 83 Reade street. The bankruptcy of the maker of the notes did not dispense with the necessity of notice to the indorser. Moore v. Alexander, 63 App. Div. 100, 71 N. Y. Supp. 420; O'Bannon Co. v. Curran, 129 App. Div. 90, 113 N. Y. Supp. 359. No proof was offered to show that the notices actually reached the indorser.

[4] Attempts were made during the lifetime of Mrs. Rosendahl, and after she had become too ill to be able to transact any business, to compound her liability. But sufficient evidence was not introduced to establish a waiver on her part of the requirement of notice of dishonor. Ross v. Hurd, 71 N. Y. 14, 27 Am. Rep. 1. After the death of testatrix further negotiations were undertaken between the claimant and her executors; but no acts or conduct of the latter could create a liability against the property of the estate, as executors cannot charge the assets of an estate with any liability not already existing. Metropolitan Trust Co. v. Truax, 154 App. Div. 442, 139 N. Y. Supp. 181.

[5] The claimant's right to recover must stand upon the validity of the notices served. The Negotiable Instruments Law (Consolidated Laws, c. 38, § 179) provides:

"Sec. 179. Where Notice Must be Sent.—Where a party has added an address to his signature, notice of dishonor must be sent to that address; (a) but if he has not given such address, then the notice must be sent as follows: (1) Either to the post office nearest to his place of residence, or to the post office where he is accustomed to receive his letters; or (2) if he live in one place and have his place of business in another, notice may be sent to either place; or (3) if he is sojourning in another place, notice may be sent to the place where he is so sojourning. But where the notice is actually received by the party within the time specified in this act it will be sufficient, though not sent in accordance with the requirements of this section."

It may be of interest to note in passing that the present law is but a re-enactment of chapter 612, Laws of 1897, as amended by chapter 336, Laws of 1898. Prior to 1897 the Law of Negotiable Instruments was almost altogether the common law, and in interpreting and applying the present codified law it may be well to consider the state of the law as then determined by the decisions and the few statutes then in force. The general rule was that notices of dishonor might be served either at the indorser's residence or place of business. Story on Promissory Notes (7th Ed.) 413; 3 Bayley, Bills and Notes, 2 Am. Ed. 271; Chitty on Bills, 12 Am. Ed. 531; Williams v. Bank of the United States, 2 Pet. 96, 7 L. Ed. 360; Ransom v. Mack, 2 Hill, 587, 38 Am. Dec. 602; Van Vechten v. Pruyn, 13 N. Y. 549; 3 Kent, Com. 107.

Originally notice by mail was not sufficient, when the party giving the notice and the party entitled to receive the notice resided in the same town or city. But this rule was relaxed so as to allow the use of the mails wherever a regular post was established. Shaylor v. Mix, 4 Allen (Mass.) 351; Ransom v. Mack, supra. Chapter 141, Laws of 1835, allowed notices to be sent to the place where the addressee resided when he signed, unless he added at the time of the signature the particular post office to which he desired the notices to be addressed. As late as 1856 notices could not be given by mail when the residence of the indorser was in the same village where the instrument was payable. However, since chapter 416, Laws of 1857, was passed, when the residence or place of business, or the place specified at the time of the signature of the person entitled to receive notices, is in the same city or town where the instrument becomes payable, notice by mail is sufficient.

Thus it is that, when sections 174 and 179 of the Negotiable Instruments Law were enacted, notice to either the place of residence or place of business was sufficient, and notice by mail was as good as personal service. The language of section 179, now in force, changes the prior law. Notification may now be given at the place of business, when the latter place and the place of residence are in different places. Unless the term "place" in section 179 is used in a different sense from that given to it in section 174 of the same statute, then under subdivision 2 of section 179 the place of business is not the proper address at which to give notice, unless the indorser does not live in the same city, town or village. Cf. Amer. Nat. Bank v. Amer. H. V. & Co., 103 App. Div. 374, 92 N. Y. Supp. 1006. Of course, in most cases a notice sent to the place of business is good under subdivision 1, considering it as the customary place for the receipt of the addressee's letters.

No claim is made in this case that the residence of the testatrix was not in New York City, where it is claimed she had her place of business. Nor does the claimant attempt to bring itself within the latter portion of subdivision 1 of section 179 by showing that the testatrix was accustomed to receive her mail at No. 83 Reade street. But, assuming that notice in all cases is sufficient when served at or mailed to the place of business, claimant did not establish that No. 83 Reade street was the indorser's place of business.

Berridge v. Fitzgerald, 10 Best & Smith, 668, is relied upon by claimant. In that case the defendant and a limited stock company, in which he was one of the directors, in order to ward off a collection suit against the company, agreed to give a bill of exchange upon the company, indorsed by the defendant. The transaction was consummated at the company's office. The defendant was an acting director, and was in the habit of attending at the company's office. The court decided that the defendant had held out the company's office as his place of business for the purpose of receiving notice of dishonor there. The facts in the matter now before me distinguish it from the case cited, in that Mrs. Rosendahl does not appear to have been an acting director or in the habit of attending at the company's office. Further, the copy of the minutes offered in evidence does not state that the meeting which

Mrs. Rosendahl attended was held at No. 83 Reade street, to which place the notice was addressed.

In Bank of the Commonwealth v. Mudgett, 44 N. Y. 514 (not cited by counsel), it was held that a notice was sufficient when directed to the defendant at his desk in the custom house. The defendant was a deputy collector, and had his office in the custom house. The court decided that the notice was sufficient, being of the opinion that the defendant had his place of business at the custom house. The court presumed that the defendant was in the habit of attending there daily in the discharge of his duties.

The testatrix cannot be said to have had a place of business at No. 83 Reade street. She may never have been there more than once, and then only to take a formal part in an organization of a corporation. The note does not appear to have been indorsed in the company's office, as was the fact in Berridge v. Fitzgerald, nor was Mrs. Rosendahl in the habit of attending at the company's office. Nor can she be taken impliedly to have held out that place as the proper place to send notices. The notes did not have any address thereon, save the address of the claimant, where they were made payable. The claimant does not appear to have been sufficiently diligent. University Press v. Williams, 48 App. Div. 188, 62 N. Y. Supp. 986.

It follows, from what has been stated, that the notice proved was not sufficient in law to charge the indorser. The claim must therefore be disallowed.

Decree accordingly.