TRENTON TRUST COMPANY, Respondent, *v.* HUDSON MECHANICAL RUBBER COMPANY, Defendant, Impleaded with EDWARD J. REILLY, Appellant.

First Department, March 20, 1925.

Bills and notes — action against indorser — defense that notice of non-payment and protest was not properly served — at time note was given, indorser was secretary and treasurer of maker — indorser resigned and so notified plaintiff — indorser had business address in Brooklyn — no proof that indorser was accustomed to receive mail at New York city address of maker after resignation — mailing notice of non-payment and protest to that address not in compliance with Negotiable Instruments Law, § 179, subds. 1, 2 — sending notice of protest by mail to particular address in city was at plaintiff's risk as to correctness of address — notice mailed to Fulton Building, Brooklyn, not properly sent, where indorser had offices in Fulton Savings Bank Building, Brooklyn — plaintiff did not show diligence in ascertaining correct address.

In an action on three promissory notes to recover from an indorser, who, at the time the notes were made, was the secretary and treasurer of the maker, a defense that notice of non-payment and protest as to one of the notes was not received by the indorser and was not properly served on him, is not overcome under subdivisions 1 and 2 of section 179 of the Negotiable Instruments Law, by proof that the notice of non-payment and protest was mailed to the indorser, addressed to 50 Church street, New York city, the place where the maker had its office at the time the notes were made, where it appears that before the note was due the indorser resigned as secretary and treasurer of the maker

and so notified the plaintiff, and there was no proof that the indorser was thereafter accustomed to receive his letters at that address, but, on the contrary, the proof showed that his name was not on the building directory at the time the note matured and that he received no personal or business mail at that address, but that his business address was in Brooklyn, N. Y., where he had, and had maintained, his offices as a practicing attorney for eighteen years. The mere fact that the indorser's name remained on the door of the office of the maker until the maker removed its office therefrom to the State of Pennsylvania, cannot be considered, since it appears that the plaintiff had no knowledge that the indorser's name continued on the office door.

It was not shown that the note in question was indorsed at the office of the maker, and any implied holding out of that place as the indorser's place of business during his connection with the maker as secretary and treasurer was negatived by his notice to the plaintiff of the fact that he had resigned, and, under the circumstances, the plaintiff did not exercise due diligence in determining the business address of the indorser.

The notice of non-payment and protest as to the other notes, which was served on the indorser by mail directed to the indorser at " Brooklyn, N. Y., Fulton Building," was not properly served within section 179 of the Negotiable Instruments Law, since it appears that while the indorser's business address was at 375 Fulton street and his office was in the Fulton Savings Bank Building, there was no evidence that that building was known as the Fulton Building, and, while it would have been a sufficient compliance with the statute to have directed the letter to the indorser at Brooklyn, N. Y., the plaintiff, by giving a particular address, assumed the risk that the particular address given was correct and that if such address should prove to be incorrect the notice would not be properly served, unless it was shown, which was not done in this case, that the address to which the notice was directed was ascertained in the exercise of due diligence to ascertain the correct address of the indorser. The evidence in this case does not show that the plaintiff exercised any diligence to ascertain the correct address of the indorser, and there was no showing of the source from which the address actually used was obtained, or that the plaintiff had reason to rely on the information which it received concerning the indorser's address.

Appeal by the defendant, Edward J. Reilly, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of December, 1923, upon the verdict of a jury rendered by direction of the court.

*John J. Riordan* [*Francis D. Saitta* of counsel; *Ralph G. Barclay* and *Edward Jay Reilly* with him on the brief], for the appellant.

*Albert H. Atterbury,* for the respondent.

Finch, J.:

The action is brought upon three promissory notes made by the Hudson Mechanical Rubber Company and indorsed by the appellant Edward J. Reilly. The latter testified that he never received any notice of protest of the notes and this was uncontradicted. He claims to have been absolved from liability as indorser upon the ground that the proof shows that said notices were not sent as provided by law.

The Hudson Mechanical Rubber Company had an office at 50 Church street, New York city. The appellant Edward J. Reilly was its secretary and treasurer. On November 6, 1922, he resigned from said offices and the plaintiff was notified accordingly. Some time subsequent to March, 1923, the office of the Hudson Mechanical Rubber Company was removed from the aforesaid address to Manheim, Penn. The first note matured January 19, 1923, and notice of non-payment and protest was mailed to the appellant addressed to 50 Church street, New York city. The appellant had not indicated upon the note any address to which notices should be mailed to him as indorser. In such a case the Negotiable Instruments Law (§ 179) provides the notice must be sent:

" 1. Either to the post-office nearest to his place of residence, or to the post-office where he is accustomed to receive his letters; or

" 2. If he live in one place, and have his place of business in another, notice may be sent to either place   *   *   *."

The aforesaid mailing of the notice to 50 Church street was subsequent to notification of the appellant's resignation as an officer of the Hudson Mechanical Rubber Company. There is no proof that the defendant, appellant, was accustomed to receive his letters at that address subsequent to the time of his resignation. On the contrary, the appellant's uncontradicted testimony is that his name was not on the downstairs directory of the building, and that he received no personal or business mail at that address, his business address being in Brooklyn, where he had and had had his offices as a practicing attorney for eighteen years. There is no evidence in the record as to his place of residence. It appears that the appellant's name continued upon the office door of the Hudson Mechanical Rubber Company until March, 1923. While the fact that his name was not removed from the door immediately upon his resignation might be considered if it had been relied upon by the respondent in an effort to ascertain the appellant's correct address for the purpose of serving the notice, the record shows that the respondent apparently did not know that the name of the appellant continued on the office door until some time in March, after the notice had been sent, at which time the respondent found the door locked. Hence the respondent could not have relied upon that fact. As noted no evidence is presented showing that 50 Church street was a place where mail was accustomed to be received by the appellant, particularly after his resignation, and there is no evidence as to his residence. Under these circumstances, however broadly subdivision 1 of section 179 of the Negotiable Instruments Law may be construed, there was not a proper mailing of the notice.

As was said in *Matter of Mandelbaum* (80 Misc. 475; affd., 159 App. Div. 909): "The claimant's right to recover must stand upon the validity of the notices served. * * *. No claim is made in this case that the residence of the testatrix was not in New York city, where it is claimed she had her place of business. Nor does the claimant attempt to bring itself within the latter portion of subdivision 1 of section 179 by showing that the testatrix was accustomed to receive her mail at No. 83 Reade street." Nor can reliance be placed on subdivision 2 of said section. Any implied holding out of the offices of the Hudson Mechanical Rubber Company as a place of business of appellant was negatived by the notice of his resignation as an officer of said company. As was said in *Matter of Mandelbaum* (*supra*): "But assuming that notice in all cases is sufficient when served at or mailed to the place of business, claimant did not establish that No. 83 Reade street was the indorser's place of business. *Berridge* v. *Fitzgerald*, 10 Best & Smith, 668, is relied upon by claimant. In that case the defendant and a limited stock company in which he was one of the directors, in order to ward off a collection suit against the company, agreed to give a bill of exchange upon the company indorsed by the defendant. The transaction was consummated at the company's office. The defendant was an acting director and was in the habit of attending at the company's office. The court decided that the defendant had held out the company's office as his place of business for the purpose of receiving notice of dishonor there. The facts in the matter now before me distinguish it from the case cited, in that Mrs. Rosendahl does not appear to have been an acting director or in the habit of attending at the company's office. * * *. The testatrix cannot be said to have had a place of business at No. 83 Reade street. She may never have been there more than once, and then only to take a formal part in an organization of a corporation. The note does not appear to have been indorsed in the company's office, as was the fact in *Berridge* v. *Fitzgerald*."

In the case at bar the note is not shown to have been indorsed at the office of the Hudson Mechanical Rubber Company, and, as stated, any implied holding out of that place as the appellant's place of business during his connection with the company in an official capacity was negatived by notice of his resignation. In spite of such notice of resignation the respondent mailed the notice to him at that address without making any efforts to ascertain whether he would be likely to receive it there. Under the circumstances this was not an exercise of due diligence. As was said by BARRETT, J., in *University Press* v. *Williams* (48 App. Div. 188, 190): "The difficulty here is, that the plaintiff used no greater

diligence to ascertain the defendant's residence or place of business than did the notary. Like the latter, it trusted to chance. Being ignorant of the defendant's proper address, its officers were bound to make reasonable inquiries in endeavoring to ascertain it. They could not allow themselves to remain ' in a state of passive and contented ignorance.' * * *. Their duty was, at least, *immediately to apply to the other parties to the note for information.* [Italics in original.] * * *. Mr. Daniel (citing numerous cases) says that ' in seeking to ascertain the whereabouts of the indorser or drawer, in order to communicate notice, inquiry should be made of the maker or acceptor ' (2 Daniel Neg. Inst. [4th ed.] § 1116); and he adds: ' It is desirable that this rule should be strictly observed, as well for the sake of uniformity as for the reason that it secures diligence.' * * *. His own and his company's non-residence did not absolve him from making these inquiries. Inquiry cannot well be called reasonable which is limited to the residence of the foreign holder. It is surely not due diligence to inquire outside the pale of possible information. Nor can the probable futility of inquiry at the holder's residence absolve him from any inquiry at all. It cannot even inconvenience him to make inquiries by letter of an accessible maker or of other accessible persons who, from their connection with the transaction or parties, are likely to be informed. * * *. As no inquiry was here made or diligence shown, it is clear that the plaintiff must fail on this branch of the case."

The other two notes matured on February 28 and March 1, 1923, respectively. In each case notice of protest was mailed to the appellant at " Brooklyn, N. Y., Fulton Building."

As stated, the appellant denied receiving the notices, and it was not contradicted that one, at least, of these notices was returned undelivered. As noted, the appellant is a lawyer and for eighteen years had offices at 375 Fulton street, Brooklyn. It appears that the Fulton Savings Bank is located at the same address in the first floor of the building, and the appellant in a colloquy with the court said: " It is the Fulton Savings Bank Building." Apparently no effort was made by the plaintiff to show that the building itself was named " Fulton."

Under the provisions of the Negotiable Instruments Law above quoted, where the indorser states no address to which notices should be sent, such notice may be mailed to him at the post office of the city in which he resides or has his place of business. Where, however, the sender goes further and gives a local address, he does so at his peril if such address should prove to be incorrect, unless it appear that such address was ascertained in the exercise of due

diligence to ascertain the correct address. In this connection the notary who mailed the notice merely stated: " I was given the address, but by whom I cannot say." While the fact that the plaintiff resides in New Jersey and the notice was mailed from that State may have some bearing on the efforts it was possible for the plaintiff to make to ascertain the correct address of the appellant, plaintiff must show that it made reasonable efforts to that end. As was said in *Cuming* v. *Roderick* (28 App. Div. 253; 42 id. 620; affd., 167 N. Y. 571): " If the notary had directed the notice to the indorser at the city of Brooklyn, without limiting or specifying any particular place in that city at which the letter was to be delivered, the notice would have been sufficient within the first of the three authorizations of the third section of the act of 1857.* But the notice was expressly limited; it was directed to a particular person at a particular place, and the indication to the postal authorities was that the individual to whom that communication was addressed was to be found at that place; hence, the risk of nondelivery was taken by the sender of the communication, and is not to be thrown upon the addressee of the notice. * * *. In order to give an effectual and binding notice under the requirement of the statute, it was his duty to make diligent inquiry." And in *Bacon* v. *Hanna* (137 N. Y. 379) it is stated that where the notary mailing the notice relied upon a reputed residence he was required to act from the best information obtained by diligent inquiry, the court saying: " Merely looking into a directory is not enough. The sources of error in that process are too many and too great. Such books are accurate enough in a general way, and convenient as an aid or assistance, but they are private ventures, created by irresponsible parties and depending upon information gathered as cheaply as possible and by unknown agents. Their help may be invoked, but, as was said in *Lawrence* v. *Miller* (16 N. Y. 235), their error may excuse the notary, but will not charge the defendant. Merely consulting them should not be deemed ' the best information obtained by diligent inquiry.' "

In the case at bar the plaintiff failed even to indicate the agent or agency from which its information was derived, or to show that it had any reason for relying on the information, and hence failed to show even a semblance of diligence under the rules referred to above. The " Fulton Building " cannot be considered a correct address, nor the building assumed to be named " Fulton," because of the presence in that building of the Fulton Savings Bank, since it is clear that under such a holding the same address would apply

---

* See Laws of 1857, chap. 416, § 3.— [REP.

to any building in which was located an important organization or corporation with the word " Fulton " as part of its name. In fact such an address might divert the notice to the particular corporation or organization with the word Fulton in its name. Had the notice been directed as required by statute to the appellant at " Brooklyn, N. Y.," the postal authorities would have endeavored to locate and in all probabilities would have succeeded in locating the appellant.

It follows that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, McAVOY and MARTIN, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.